**UNITED STATES, Appellee,**

v.

**Hojatollah TAJEDDINI, Defendant, Appellant.**

**Hojatollah TAJEDDINI, Petitioner, Appellant,**

v.

**UNITED STATES of America, Respondent, Appellee.**

Nos. 90–1441, 90–1681, 90–1992 and 90–1545.

United States Court of Appeals, First Circuit.

Submitted May 23, 1991.

Decided Sept. 26, 1991.

---

**460**

Hojatollah Tajeddini, on brief pro se.

Wayne A. Budd, U.S. Atty. and Brien T. O'Connor, Asst. U.S. Atty., on brief for appellee.

Before BREYER, Chief Judge, and CAMPBELL and SELYA, Circuit Judges.

PER CURIAM.

Petitioner was convicted after a jury trial of conspiracy to import heroin and of importation. No timely notice of appeal was filed from the conviction. Petitioner has now appealed from the denial of the following: (1) motion seeking a new trial on the basis of new evidence, (2) § 2255 petition alleging ineffective assistance of counsel, (3) motion to order for ineffective assistance of counsel, and (4) motion for return of seized property. All four were denied on their face without an evidentiary hearing. As there was much overlap among these filings, we will not now address each motion separately, but rather will focus on the major issues.

Petitioner's basic contention running through most of his motions is that he did not knowingly bring heroin into this country. Instead, he claims, an Iranian "friend" told him the substance was an herbal cancer medicine and asked him to bring it to one Parviz Parvin, who had liver cancer. Petitioner's counsel was ineffective in that he failed timely to seek a continuance so that petitioner could obtain the results of an Iranian police investigation of the "friend," he inadequately presented petitioner's defense, and then he neglected to file a notice of appeal. Petitioner now has the results of the Iranian police investigation and feels this new evidence supports his claim of innocence and warrants a new trial. In order to assess the materiality of the new evidence as well as petitioner's claims of ineffective assistance, we first review the trial record.

I

There was evidence of the following.

On October 20, 1988, petitioner, who is an Iranian citizen, his wife, and his two young children arrived in Boston on a flight from Germany. The wife, Lori Ann McBride, and the two children went through one customs line, and petitioner another. A computer check of McBride revealed an outstanding warrant for her arrest for parental kidnapping. Told of a problem and asked to step aside, McBride was observed to be very nervous and sweating profusely. She was taken to a secondary inspection room. Immediately upon entering, she removed from the pockets of her ski jacket five packages consisting of condoms in various wrappings. The substance within the condoms tested positive for heroin. Meanwhile, petitioner, in a separate line, had told a customs inspector that he had been a student in Germany, was travelling alone, and had not been in Iran for six or seven years. His customs declaration form similarly indicated that he was alone. He, too, was taken to a secondary inspection room. A search of his lug-

gage revealed airline tickets for passengers described as infant Tajeddini (Tajeddini is petitioner's last name) and child Tajeddini.

DEA Agent Joseph Desmond was called to the scene. According to his testimony, after speaking with McBride and a customs inspector, he informed petitioner he was under arrest, administered *Miranda* warnings, and asked if he would answer questions. Petitioner responded that he was willing to answer questions, but did not understand why he was being held. Desmond terminated the conversation at that point. Fifteen to twenty minutes later Desmond returned at petitioner's request. Petitioner then said, according to Desmond, that for the sake of his wife and children petitioner wanted to explain. Petitioner proceeded to relate that he had obtained the opium in Germany from one Mohammed Ali Karabolout. Petitioner was to be paid $3000 for delivering it to Parvin, a large heroin dealer, in San Francisco. Petitioner offered to participate in a controlled delivery. The next day, petitioner, questioned again, said essentially the same thing. At neither of those interviews did petitioner claim that the substance was medicine or that Parvin had cancer. Preparations were made for a controlled delivery, but petitioner, informed that cooperation would not preclude prosecution and fearful of his family's and his own safety, decided not to follow through.

A chemist called by the government testified that the substance in question was 20% heroin and also contained caffeine, phenobarbital, acetaminophen, and starch. Starch is a common diluting agent, and the chemist also had seen caffeine used before.

Petitioner's testimony at trial differed significantly from that of the customs agents and Desmond. Petitioner testified that he had been working for the FBI in Iran in counter terrorist operations. After leaving Iran for his eventual return to the United States, petitioner had received the substance in question in Turkey from his friend Gholamreza, known as George, who, as a favor to petitioner, had driven petitioner and his family from Iran to Turkey. George said the substance was shireb, a

medicine for "cancer and strong arthritis or bone tuberculosis or something," asked petitioner to deliver it to Parvin, and suggested that Parvin might, in return, hire petitioner as a limousine driver. Petitioner, his wife, and children then flew to Germany and, six days later, to the United States. At all times, the substance was in the pockets of the wife's jacket. Petitioner and his wife knew of the outstanding warrant for the wife's arrest. So that petitioner would not be tainted by the wife's feared arrest and would be available to bail out the wife and take care of the children, petitioner and his wife agreed to go through separate customs lines, petitioner said. For that reason, petitioner represented that he was travelling alone.

At United States Customs, petitioner was taken to an inspection room. After an hour of "torture" with more than ten agents "ripping off all [his] stuff," threatening to beat him, and threatening him with sexual assault in jail, Agent Desmond appeared. Petitioner could not tell Agent Desmond of his secret undercover work in Iran, so he did not mention his stay there. When informed by Agent Desmond that petitioner's wife was carrying heroin, petitioner denied any knowledge of any illegal substance. Indeed, cognizant of the outstanding warrant and therefore aware his wife likely would be arrested and searched, petitioner clearly would never have knowingly or willingly bought an illegal substance into this country, petitioner explained. Petitioner denied he had ever said he was being paid $3000 to carry the substance to Parvin.

## II

We now turn to petitioner's arguments. We address only those fairly presented to the district court in the motion for new trial, the § 2255 petition, the motion to order for ineffective assistance of counsel, or the motion for seized property and its return, the denials of which petitioner has now appealed. We do not address matters raised in different motions or for the first time on appeal.

### A. *Ineffective Assistance of Counsel*

#### 1. Failure to communicate with petitioner

Petitioner asserts that counsel failed for several months to answer petitioner's calls or communicate in any manner with petitioner with the result that petitioner, frantic and bereft of advice, called and wrote to DEA agent Desmond, making statements—including that Parvin was a criminal—which were then used against petitioner at trial. These statements, petitioner claims, were the product of counsel's unconstitutional failure to communicate with him and therefore should be suppressed.

■ In particular, petitioner points to a November 17, 1988 letter to Agent Desmond introduced into evidence at the suppression hearing. (This letter has not been included in the portions of the record sent to this court, but apparently in it petitioner made statements indicating that petitioner believed Parvin to have a criminal background.) At the suppression hearing, petitioner's counsel stated "I have consulted with my client specifically about the question of the letter, and we have no objection to its admission...." Petitioner did not contradict counsel's statement. Apparently, petitioner then felt the letter was more helpful than harmful. Having consented to its admission, petitioner can not now complain.

■ At trial, the letter was not introduced, but, on cross examination, petitioner acknowledged referring in his letter to Desmond to Parvin as the Al Capone of San Francisco and claiming that Parvin was the key to the California drug supply. Petitioner sought to retract these statement somewhat by claiming they were not literally true, but rather had been an exaggeration so as to interest Desmond in helping petitioner prove petitioner's innocence. Petitioner, perceiving himself as the innocent dupe, felt efforts should be made to capture the real criminals—Gholamreza and/or Parvin. Petitioner then testified that he would "be glad to offer my own letter to [Desmond]." In other words, at the time of trial, petitioner seems to have wanted his letter introduced and felt it was consistent with his claim that he was being discriminated against because of his nationality while the true criminals went free. Having failed at that strategy, he now labels the letter as the product of ineffective assistance of counsel—counsel's failure to communicate with petitioner.

According to Agent Desmond's testimony at the suppression hearing, the letter in question was dated November 17, 1988, less than one month after petitioner's arrest. Moreover, Agent Desmond said, he had advised petitioner at his first court appearance in the presence of counsel to communicate through counsel, and the court, in a similarly vein, had tried to stem petitioner's admissions by advising him that it was not in his best interest to make them. Petitioner does not say he was precluded from writing to counsel, that he specifically asked counsel to communicate with Desmond, or that he advised counsel he was planning to talk or write to Desmond, yet counsel failed to advise against it. Rather, he seeks to blame on counsel's alleged failure to communicate with petitioner—in the month following arrest and long before any trial date—petitioner's voluntary actions in calling and writing Desmond. In these circumstances, we find no merit to petitioner's arguments. Counsel was not obliged to time his trial preparation to suit petitioner's convenience. The alleged failure to communicate at a time well in advance of trial does not warrant suppression of petitioner's statements.

#### 2. Pretrial motion errors

■ Several of the pre-trial motions counsel filed contained errors. First, counsel's motion to preserve evidence, while clearly listing petitioner's name in the heading, commenced "Now comes the defendant, Walter J. Preeble, III...." A second motion misdated the charged conspiracy. These word processing errors were inconsequential. That counsel apparently utilized motions or portions thereof originally drafted in other cases, but neglected to make every corresponding change, did not prejudice petitioner. *See Strickland v. Washington*, 466 U.S. 668,

687–96, 104 S.Ct. 2052, 2064–69, 80 L.Ed.2d 674 (1984) (to be entitled to relief on a claim of ineffective assistance of trial counsel, the convicted defendant must show both that counsel's acts were "outside the wide range of professionally competent assistance" *and* that he was prejudiced by them, in other words, that "counsel's errors were so serious as to deprive the defendant of a fair trial"). The third inaccuracy—a reference in the requested jury instruction to a charge of conspiracy to possess with intent to distribute heroin when in fact petitioner was indicted for conspiracy to import heroin—similarly did not prejudice petitioner as the trial judge's instructions to the jury did not repeat the mistake.

### 3. Failure to move for reconsideration

■ Petitioner contends counsel should have moved for reconsideration of the denial of petitioner's motion to suppress the statements made to Agent Desmond.

Suppression had originally been sought on the ground that the statements had been obtained without *Miranda* warnings having been given or understood. In that regard, petitioner testified at the suppression hearing that he did not remember any such warning and that after two hours of abuse and threats from customs agents prior to Desmond's arrival, he could not have understood what Desmond was saying. Agent Desmond testified, however, that he did give petitioner *Miranda* warnings, that petitioner had replied he had understood, that Desmond had initially terminated the interview, but that petitioner had then specifically requested Desmond to return. When Desmond did so, petitioner admitted to knowingly transporting opium. The court, in it opinion denying petitioner's motion to suppress, resolved the credibility matter against petitioner and determined that petitioner's statements were freely and voluntarily made.

Petitioner's position had been apparent from the face of his testimony. Counsel was not required to rehash through a motion for rehearing the position the court had once rejected.

### 4. Tardy motion for continuance

■ Petitioner faults counsel for waiting until after the jury was impaneled to ask the court for a continuance so that petitioner could obtain the results of an Iranian police investigation. Because of the motion's last minute nature—and not its content, petitioner apparently believes—the motion was denied. The results of the Iranian police investigation, which petitioner obtained after his trial, were also the basis of petitioner's motion for a new trial. For the reasons which follow, we conclude that the documents were not admissible into evidence. Consequently, the court did not err or abuse its discretion in denying the motion for new trial, and petitioner was not prejudiced by the timing of the motion for continuance.

The police reports in question indicate that petitioner's father filed a complaint with the Tehran prosecutor's office against Ali Karabolout (the source of the heroin according to Agent Desmond's account of petitioner's confession) and Gholamreza Malekan. The father claimed that Karabolout and Malekan had given to petitioner in Turkey a package to take to Parvin, a cancer patient in the United States, representing the package to be medicine, but knowing that it contained material which could not lawfully be imported. Malekan had done this to obtain revenge on petitioner, the father charged, because Malekan thought petitioner was responsible for Malekan's deportation from the United States.

Ali Karabolout was arrested on September 2, 1989. Questioned, Karabolout confessed in material part as follows, according to the police reports:

Mr. Malekan, he was deported from America, when he always thought and said that Mr. HOJATOLLAH TAJEDDINI, informed Immigration Office of his illegal staying, and thus complaining of the serious loss he has had, as he would not be able to return to the United States of America, for a long time. Mr. Malekan has repeatedly told me that we should somehow invalid Mr. TAJEDDINI, against the American Government by involving him with police though a good

plotting.... Against execution of such hostile conspiracy, Mr. Malekan promised me to reciprocate it by obtaining entry visa to the United States and furnishing of my living costs while I will be there.... Mr. Malekan proposed to prepare a pack of chemical material which its import is prohibited to the United States of America and give it to [petitioner] as local botanic medicine to deliver to a common friend in the United States of America. In the meantime I have not been aware of the composition and quality of the made medicine. Mr. Malekan also said that Mr. TAJEDDINI, is not aware of even importing of vegetable seed is forbidden to the United States of America, and this material is the similar one but it is not narcotic. He further mention that as most of the friends know that such named patient is in need of medicine, therefore Mr. TAJEDDINI, won't be doubtful to his plot. He also added that in order to persuade him fully we will tell him that other friends have been taken some before. After preparation of so called medicine by Mr. Malekan, he told me that after its delivery to Mr. Tajeddini, he will report it to the American Police in order to arrest him on arrival....

It was further agreed that after delivery of so called medicine we will tell [petitioner] that due to adhesiveness of it, the medicine should be kept in pocket, in order to be sure about his entrapping.

Finally the plot has been implemented and after delivery of this stuff by myself to Mr. Tajeddini in.... Turkey, we pretended that as mailing of medicine from Iran and Turkey is prohibited to the United States, thus we have to send it by yourself ... for Mr. Parvin (the patient) who is suffering from liver cancer, whose half of liver had been taken out, the statements which were entirely false, feigned.

Thus, Karabolout admitted to "plotting" against petitioner and to delivering the substance to petitioner. He denied knowing the medicine's composition, however, and claimed to have been informed by Malekan that the substance was non-narcotic, containing material similar to vegetable seed whose importation into the United States is prohibited. The police reports also indicate that petitioner's father agreed to drop his suit against Karabolout after receiving Karabolout's explanation.

Petitioner views the police reports, particularly Karabolout's admission therein to plotting against petitioner, as evidence of petitioner's innocence. The reports, however, are hearsay, and hence were not admissible unless within one of the exceptions to the hearsay rule. *See* Fed.R.Evid. 802. Petitioner believes the reports could have been admissable in evidence had the district court acted pursuant to 18 U.S.C. § 3492. Petitioner is wrong. That section provides in material part as follows:

§ 3492. Commission to consular officers to authenticate foreign documents.

(a) The testimony of any witness in a foreign country may be taken either on oral or written interrogatories, or on interrogatories partly oral and partly written, pursuant to a commission issued, as hereinafter provided, *for the purpose of determining whether any foreign documents sought to be used in any criminal action or proceeding in any court of the United States are genuine, and whether the authentication requirements of the Federal Rules of Evidence are satisfied with respect to any such document* (or the original thereof in cases such document is a copy). Application for the issuance of a commission for such purpose may be made to the court in which such action or proceeding is pending by the United States or any other party thereto....

(Emphasis added). At most, the *authenticity* of the documents could have been established under the § 3492 procedure. Nevertheless, the material *content* of the documents—the father's charges and Karabolout's statement—would remain inadmissible hearsay. *See, e.g., United States v. Snyder,* 787 F.2d 1429, 1433–34 (10th Cir.) (portion of investigative report recounting third persons' statements not admissible), *cert. denied,* 479 U.S. 836, 107 S.Ct. 134, 93 L.Ed.2d 78 (1986); *United States v. Smith,*

521 F.2d 957, 964–65 (D.C.Cir.1975) (statement of complaining witness contained in police report is hearsay and is not admissible under the business records exception); *Ramrattan v. Burger King Corp.*, 656 F.Supp. 522, 529 (D.Md.1987) (portion of police report recounting statements of witnesses to accident not admissible).

Relying on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), petitioner contends that Karabolout's statement, even if hearsay, was nevertheless admissible. In *Chambers*, the defendant sought to elicit testimony that one McDonald had confessed to the murder with which defendant was charged. McDonald's out of court statements were excluded as hearsay. The Supreme Court concluded, in the circumstances of that case where McDonald had made several independent confessions each of which had been corroborated by other evidence, McDonald was available for cross examination, and the confessions were important to defendant's defense, that the evidence was sufficiently trustworthy to be admitted and so critical to the defense that its exclusion violated due process.

The circumstances in the present case are materially different. Karabolout's "confession," rather than being against any significant penal interest, *see* Fed. R.Evid. 804(b)(3) (rendering admissible in evidence an unavailable declarant's statement provided the statement "at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true"), admitted very little—plotting and delivering something similar to vegetable seed to petitioner. Charged with being the source of the heroin, Karabolout denied any knowledge of narcotics and placed the blame on Malakan. Moreover, in return for the innocuous statement, a law suit against Karabolout was dropped. The district court was not required to conclude that the statement—materially more exculpatory than inculpatory to Karabolout—fell into any exception to the hearsay rule or was imbued with sufficient indicia of reliability to render it admissible.

5. Failure to subpoena witnesses

█ Petitioner contends that he repeatedly asked his attorney to request subpoenas under Fed.R.Civ.P. 17(b) (court shall order subpoena "upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense") for several witnesses in California. And petitioner has included in his materials a copy of a letter he purportedly sent to his attorney prior to trial describing the need for these witnesses. The letter described these "essential" witnesses as a person who knew that Parvin had liver cancer and a Persian doctor "who could testify about the existence of such substance in Iran." Petitioner failed to identify any of these witnesses by name.

At the close of the trial and out of the presence of the jury, petitioner complained to the court of the absence of these witnesses. Counsel at that point represented that he had discussed these matters with petitioner, but that petitioner had never identified any person by name for whom counsel could apply for a subpoena. Petitioner did not challenge counsel's representation or then suggest any names. Consequently, counsel can not be faulted for failing to request subpoenas for unidentified persons.

It may be that petitioner is now claiming that counsel should have investigated further to identify a person who knew Parvin and a Persian doctor. Counsel represented at trial, however, that petitioner had said he would supply the information, but then never did. Petitioner did not disagree. Petitioner may not now blame counsel for failing to do what petitioner specifically relieved counsel of doing.

Furthermore, the witnesses' testimony, at very best, would have been peripheral. Petitioner does not claim that he wanted Parvin himself to testify. Rather, petitioner referred vaguely to persons who knew Parvin. Whether they had personal knowledge of Parvin's alleged liver cancer or

were simply relying on general rumor is not apparent. *See* Fed.R.Evid. 602 ("a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge"). Moreover, to call as a witness a person other than Parvin to testify to Parvin's health might emphasize Parvin's absence and suggest that Parvin's testimony would have been adverse to petitioner. Consequently, it would have been a legitimate strategic choice not to call one of Parvin's associates or friends and hence counsel's failure to procure such testimony does not constitute ineffective assistance of counsel.

■ As for a Persian doctor, even if we were to assume that he could testify to the existence of various herbal preparations or medications used in Iran for cancer, petitioner would not be significantly aided, for it is common knowledge that different cultures use different substances for medicinal purposes. While it is not entirely clear, it may be that petitioner is now claiming that the combination of ingredients petitioner carried, including the heroin, is used in Iran as a cancer medicine and that the doctor would so testify. If that is so, counsel's judgment not to locate and call such a witness was a permissible one. To introduce evidence that heroin is used in Iranian cancer medications and that petitioner agreed to transport an Iranian cancer medication would not help petitioner's case, counsel could reasonably conclude, even if petitioner would have also claimed that he did not know the composition of the medicine.

Petitioner claims that after talking with other inmates he has learned that the ingredients with which the heroin was mixed rendered the mixture unusable as a street drug. He feels a Persian doctor could so testify. The government chemist testified that the mixture was 20% heroin. Regardless whether or not the heroin was in street usable form, its importation was illegal. *See* 21 U.S.C. § 952 (proscribing importation of controlled substances in schedule I

or II); 21 U.S.C. § 812, Schedule I(b)(10) (listing heroin).

6. Failure to file notice of appeal.

Petitioner contends that his counsel represented at sentencing that petitioner would appeal,[1] but then neglected to file a notice of appeal. Not until long after the time for appealing had expired did petitioner learn of counsel's failure.

■ This court has indicated that while a defendant cannot, via a § 2255 petition, renew rights lost by a voluntary failure to appeal, loss of the right to appeal resulting from ineffective assistance of counsel can, in an appropriate case, be remedied under § 2255. *Lopez–Torres v. United States*, 876 F.2d 4 (1st Cir.), *cert. denied*, 493 U.S. 979, 110 S.Ct. 508, 107 L.Ed.2d 510 (1989). And, we have said, that the "failure of court-appointed counsel to prosecute an appeal—in the absence of waiver by defendant or compliance of counsel with *Anders v. California*, 386 U.S. 738, 744 [87 S.Ct. 1396, 1400, 18 L.Ed.2d 493] (1967)—is a per se deprivation of the right to counsel." *Wilbur v. Maine*, 421 F.2d 1327, 1329 (1st Cir.1970).

■ The district court did not determine whether petitioner had voluntarily forgone his right to appeal. Instead, the court summarily dismissed the § 2255 petition on its face without any evidentiary hearing and before the government had filed any response. No explanation was given; the petition was simply marked "motion denied." Several months earlier, however, in denying petitioner's motion for new trial which, in addition to seeking a new trial based on new evidence had also complained of counsel's failure to appeal, the court had written that "[a]ny appeal would be frivolous." Consequently, we conclude that petitioner's claim in his § 2255 petition of counsel's ineffective assistance in failing to file a notice of appeal was similarly denied on the ground that any appeal would be frivolous. In other words, the claim was dismissed because

---

**1.** Immediately after sentence was pronounced, counsel moved for bail pending appeal stating

that petitioner "intends to persist in his right to appeal...."

petitioner had failed to show that his direct criminal appeal would have had any arguable merit.

It was error to place on a pro se indigent prisoner the burden, at the initial pleading stage, of establishing an arguably meritorious issue for appeal and was contrary to our statement in *Lopez–Torres v. United States*, 876 F.2d at 5 that "it may be open to the *government* to show that the appeal would have lacked merit." (Emphasis added.) *See also Rodriquez v. United States*, 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969) (pro se § 2255 petitioner seeking reinstatement of right to appeal cannot be required to specify the points he would raise were his appeal reinstated); *Mack v. Smith*, 659 F.2d 23, 25–26 (5th Cir.1981) (where § 2255 petitioner claimed counsel had failed to file a timely notice of appeal, court erred in failing to resolve the ineffective assistance claim and instead dismissing the § 2255 petition on its face on the basis that the other, substantive, claims of the § 2255 petition lacked merit); *Wilbur v. Maine*, 421 F.2d 1327, 1330 (1st Cir.1970) (prisoner whose appeal was dismissed because of counsel's failure to prosecute is not required to show prejudice in order to regain his appeal).

We think that, at a minimum, counsel would first have to be appointed for petitioner before it could be concluded that any appeal petitioner might have filed would have been meritless. This is because a federally convicted defendant has the right to a direct appeal from his conviction, *Coppedge v. United States*, 369 U.S. 438, 441, 82 S.Ct. 917, 919, 8 L.Ed.2d 21 (1962), as well as the constitutional right to the effective assistance of counsel on that appeal, *Evitts v. Lucey*, 469 U.S. 387, 396–98, 105 S.Ct. 830, 836–37, 83 L.Ed.2d 821 (1985), rights which are denied if an appointed counsel fails without the defendant's knowledge or consent to perfect the appeal. We do not see how the right to appeal and to effective assistance of counsel in connection therewith can be adequately vindicated if, as a condition to any relief, petitioner must first establish—without the assistance of any counsel—that he has a non-frivolous or arguably meritorious issue to present on appeal. Requiring an initial demonstration of merit from an unrepresented defendant as a condition to remedying the involuntary loss of appellate rights would deprive the defendant of one of the very benefits of appellate counsel—review by counsel for the purpose of identifying potential appellate issues. *See Anders v. California*, 386 U.S. 738, 744–45, 87 S.Ct. 1396, 1400–01, 18 L.Ed.2d 493 (1967) (indigent's right to counsel on appeal requires counsel wishing to withdraw on the ground the appeal has no merit to first act as an advocate for the indigent and file a brief "referring to anything in the record that might arguably support the appeal").

Absent appointment of counsel for petitioner, we do not think it permissible for either the district court or this court to determine that any appeal would be frivolous.[2] *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), is instructive. There, appointed appellate counsel, after representing that he had reviewed the record and found no error meriting reversal, was permitted to withdraw. He failed to file an *Ander's* brief and hence did not provide any effective advocacy to defendant. No new attorney was appointed. The appellate court then, aided by briefs filed on behalf of co-defendants, reviewed the record itself and concluded that coun-

---

**2.** We do not now address whether, if the district court were to determine that counsel had failed to file a notice of appeal without petitioner's knowledge or consent, that court would then be required to accord petitioner an out of time appeal or, instead, whether the district court could properly require appointed counsel to specify what issues would be raised on appeal and then deny relief on the ground that any appeal would be frivolous. That issue is raised in an appeal now pending before this court, no. 91–1584 *Bonneau v. United States*, in which both sides are represented by counsel. Because the issue has not been squarely briefed in the present case and possibly may not arise should the district court determine that petitioner voluntarily forwent his direct criminal appeal, we defer its resolution. We decide now only that an unrepresented, indigent prisoner, deprived through ineffective assistance counsel of his direct criminal appeal, can not be required to specify what issues he would raise on appeal were his appeal reinstated.

sel's certification of meritlessness was highly questionable as defendant had several arguable claims, one of which required reversal of one of the convictions for plain error. The appellate court affirmed the remaining convictions and determined that defendant had not been prejudiced by counsel's failure to more carefully examine the record since the court itself had thoroughly reviewed the record.

Rejecting the state's harmless error/lack of prejudice analysis and stressing the importance of an adversary appellate presentation, the Supreme Court concluded that the appellate court's procedure had deprived defendant of the right to counsel on appeal:

> [T]he question whether the briefs filed by petitioner's codefendants, along with the court's own review of the record, adequately focused the court's attention on the arguable claims presented in petitioner's case is itself an issue that should not have been resolved without the benefit of an adversary presentation. An attorney acting on petitioner's behalf might well have convinced the court that petitioner's interests were at odds with his codefendant's or that petitioner's case involved significant issues not at stake in his codefendants' cases. Mere speculation that counsel would not have made a difference is no substitute for actual appellate advocacy, particularly when the court's speculation is itself unguided by the adversary process.

*Id.*, at 87, 109 S.Ct. at 353.

The court in *Penson* pointed out that the defendant had been left "completely without representation during the appellate court's actual decisional process" and stated, in rejecting the contention that the defendant should be required to show prejudice, that "the presumption of prejudice must extend ... to the denial of counsel on appeal." *Id.* at 88, 109 S.Ct. at 354. In other words, counsel having failed in his duty to review the record and identify arguable issues, the defect could not properly be remedied by the appellate court's independent—but non adversary—review. Rather, the defendant was entitled to the

effective assistance of counsel, that is, a counsel who, at a minimum, would comply with *Anders v. California* by reviewing the record and pointing out in a brief any arguably meritorious issues.

In the present case, we are dealing with a claim of ineffective assistance of counsel at an earlier stage—counsel's failure to file a notice of appeal, allegedly without petitioner's knowledge or consent—whereas the ineffectiveness is *Penson* occurred slightly later—the notice of appeal was filed, but counsel failed thereafter to provide any advocacy. The end result, however, in both cases is similar. The convicted defendant has not obtained the benefit of any adversary presentation on appeal. No advocate reviewed the proceeding and identified any potentially arguable issues. Just as prejudice was presumed in *Penson* to flow from the absence of an effective appellate advocate, so too, we think, must prejudice be presumed here (at least so long as petitioner remains unrepresented) should it be established that counsel's failure to file a notice of appeal was without petitioner's consent. *See Lozada v. Deeds,* — U.S. ——, 111 S.Ct. 860, 112 L.Ed.2d 956 (1991) (granting petition for certiorari and noting that two courts of appeal presume prejudice when counsel ineffectively fails to appeal); *Abels v. Kaiser,* 913 F.2d 821, 823 (10th Cir.1990) (retained counsel's failure to perfect an appeal violated state prisoner's right to effective assistance of appellate counsel; district court erred in applying *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and concluding prisoner had made no showing of prejudice as prisoner is not required to specify what points he would raise were his appeal reinstated); *Estes v. United States,* 883 F.2d 645, 648–49 (8th Cir.1989) (deficient attorney performance in failing to appeal is per se prejudicial; petitioner not required to specify what issues would be raised on appeal).

Consequently, petitioner's claim of ineffective assistance of counsel based on counsel's failure to file a notice of appeal must be remanded for further proceedings. On remand, the district court should determine

whether petitioner's loss of appellate rights was voluntary.

B. *Trial court's failure to inquire into petitioner's complaints of ineffective assistance of counsel.*

■■■ Having found no merit in petitioner's attacks on counsel's trial or pre-trial performance, we need not dwell long on petitioner's related claim that the trial court should have responded to petitioner's complaints about counsel's performance. To be sure, we have said that "[w]here the accused voices objection to appointed counsel, the trial court should inquire into the reason for the dissatisfaction." *United States v. Allen,* 789 F.2d 90, 92 (1st Cir. 1986), *cert. denied,* 479 U.S. 846, 107 S.Ct. 164, 93 L.Ed.2d 103 (1986). And, according to copies of letters petitioner has filed, his complaints to the court about counsel began approximately a month after arrest. The first such letter complained about counsel's failure to arrange a meeting between petitioner and his wife so that they might plan their trial strategy. Eventually, however, and prior to trial, the court did authorize such a meeting. The next few letters added complaints of Attorney Burke's failure to communicate and asked for new counsel. Thereafter, a different counsel, Attorney Boudreau, an associate of Attorney Burke, filed a host of motions on petitioner's behalf, and he represented petitioner at the January 19, 1989 motion to suppress hearing. Petitioner, although quite vocal on other matters, did not register any specific complaints with the court concerning present counsel (Boudreau) either at the hearing, at trial, or in the two month interval between the two. Indeed, at the suppression hearing, petitioner said he had conferred with Boudreau about "the whole case." Consequently, the court could have reasonably concluded that the dissatisfaction had been resolved with the change of counsel.

At the close of trial, the trial judge permitted petitioner to address him, at which point petitioner complained of the absence, as witnesses, of a Persian doctor as well as a person who could testify to Parvin's cancer, and explained his need for delay in order to obtain the results of the Iranian police's investigation of George Gholamreza. In view of counsel's representations at this colloquy that petitioner had never identified these potential witnesses and petitioner's failure to contradict counsel, we think the court adequately satisfied itself that counsel had not been derelict and that there was no good cause for new counsel.

Two months after petitioner was found guilty, petitioner began to complain again of counsel. On May 18, 1989, his motion for ineffective assistance of counsel was filed. This motion again complained of the failure of the first attorney (Burke) to communicate with petitioner.. The only particular registered against the attorney (Boudreau) who represented petitioner at trial, however, was that Boudreau was unwilling to bring Burke's alleged derelictions to the court's attention. The motion concluded generally that petitioner's constitutional rights had been violated. Petitioner asked for a hearing. A second letter, received by the court two weeks prior to sentencing, also complained of counsel's failure to communicate, both prior and subsequent to the guilty verdict. Petitioner then referred to a custody battle for his children and a need "to stop the adoption process" and asked the court to consider petitioner's situation. In view of the lack of specifics, the court may reasonably have concluded that petitioner had nothing new to present, but rather wanted once again to rehash his prior objections.

At sentencing, the court did not inquire specifically into petitioner's complaints concerning counsel. The court did, however, ask petitioner whether he had anything to say, at which point petitioner went on at length about a number of subjects, but did not complain about Attorney Boudreau. In these circumstances, we conclude the court adequately discharged its responsibility.

C. *Denial of counsel on motion for new trial.*

■■■ Relying on *Menefield v. Borg,* 881 F.2d 696 (9th Cir.1989), petitioner contends he was constitutionally entitled to the ap-

**470**

pointment of counsel in connection with his motion for new trial based on newly discovered evidence. In *Menefield,* a panel of the Ninth Circuit held that under California law, a motion for new trial was a critical stage and that a defendant who had proceeded pro se at trial was entitled to appointed counsel in connection with his motion for new trial. This circuit and others, however, have held that a federally convicted defendant is not entitled under the Criminal Justice Act, 18 U.S.C. § 3006A, or the Sixth Amendment, to appointment of counsel on a motion for new trial. *See United States v. Lee,* 513 F.2d 423 (D.C.Cir.) *cert. denied,* 423 U.S. 916, 96 S.Ct. 225, 46 L.Ed.2d 146 (1975); *United States v. Birrell,* 482 F.2d 890, 892 (2d Cir.1973); *Dirring v. United States,* 353 F.2d 519 (1st Cir.1965). To be sure, in those cases the convicted defendants had appointed counsel on appeal and filed their motions for new trial after the conclusion of appellate proceedings, whereas petitioner did not take a direct appeal. We do not think this is material, in so far as petitioner was seeking a new trial based on new evidence. We do not see why the convicted defendant who forgoes a direct appeal and whose conviction has become final should be treated differently from the defendant who has chosen to appeal, with respect to entitlement to counsel, on a collateral attack on that conviction. If, as petitioner claims, he lost his direct appeal through counsel's ineffective assistance, the proper remedy for that is reinstatement of appellate right with appointment of counsel—not a collateral attack through a new trial motion based on newly discovered evidence.

D. *Denial of Motion for Return of Seized Property.*

■ The motion for return of seized property stated that the passports and other unspecified documents pertaining to petitioner's children had been seized when petitioner was arrested, but had not been returned. Petitioner indicated that the children were in foster care, but that he was trying to have them placed in the custody of petitioner's parents. He stated that the passports and documents were needed to accomplish that transfer of custody.

The passports were introduced as evidence at trial. The government agrees in its brief to return the passports once petitioner's litigation is terminated.

There is no indication that the Department of Social Services, into whose custody the children were placed when petitioner and his wife were arrested, has approved petitioner's placement plan. In these circumstance, where no imminent need for the passports is apparent and legal proceedings are still ongoing, we see no error in the denial of the motion for return of property.

### III

We have carefully considered all of petitioner's arguments. Except for his allegation of ineffective assistance of counsel based on counsel's alleged failure to file a notice of appeal without petitioner's knowledge or consent, no relief is warranted. Consequently, the February 15, 1990 order denying petitioner's motion for new trial is affirmed. The June 20, 1990 order denying motion for ineffective assistance of counsel is affirmed. The September 5, 1990 order denying motion for seized property and its return is affirmed. The May 16, 1990 order denying petitioner's § 2255 petition is affirmed in part, but vacated with respect to the summary dismissal of petitioner's claim of ineffective assistance of counsel based on counsel's failure to file a notice of appeal, and the case is remanded for further proceedings consistent with this opinion.