Eddie B. BELL, Petitioner–Appellee,

v.

Don R. HILL, Warden, Respondent–Appellant.

No. 98–55323.

United States Court of Appeals,
Ninth Circuit.

Submitted July 15, 1999.[1]

Decided Sept. 9, 1999.

1. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Jerald L. Brainin, Los Angeles, California, for appellee Bell.

Paul C. Ament, DAG, Los Angeles, California, for the appellant.

Before: BRUNETTI, RYMER, and SILVERMAN, Circuit Judges.

Opinion by Judge BRUNETTI; Dissent by Judge RYMER.

BRUNETTI, Circuit Judge:

Don Hill ("Hill"), warden of the California State Prison at Tehachapi, appeals from the district court's order granting Eddie Bell ("Bell") a writ of habeas corpus unless the State of California schedules a motion for new trial with appointed counsel or a new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291, review the district court's order de novo, *see Eslaminia v. White*, 136 F.3d 1234, 1236 (9th Cir.1998), and affirm.

## I.

On November 6, 1990, Bell was sentenced to thirteen years in prison after a jury found him guilty of second degree robbery. Bell waived his right to counsel and represented himself during his robbery trial, but requested that the court appoint counsel to represent him for his motion for a new trial after the jury returned its guilty verdict. The state trial court, noting that California and other federal circuit courts had rejected our decision in *Menefield v. Borg*, 881 F.2d 696, 701 (9th Cir.1989) ("We ... hold that ... an accused who requests an attorney at the time of a motion for a new trial is entitled to have one appointed"), denied Bell's request for counsel. Bell's conviction and sentence were affirmed on direct appeal and the California Supreme Court denied Bell's petition for review.

On July 19, 1994, Bell filed his First Amended Petition for Writ of Habeas Corpus in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 2254. Bell challenged his 1990 robbery conviction and sentence alleging, *inter alia*, that he was denied his Sixth Amendment right to counsel when the state trial court refused to appoint counsel for his new trial motion. The district court, after adopting the report and recommendation of the Magistrate Judge, issued an order granting Bell a writ of habeas corpus unless the State of California scheduled either a motion for a new trial with appointed counsel or a new trial. The district court, via the Magistrate's report, reasoned that, under our decision in *Menefield*, the state trial court's refusal to appoint Bell counsel for his new trial motion violated Bell's Sixth Amendment right to counsel and was prejudicial per se. Hill appeals from the district court's order granting Bell habeas relief arguing that the district court's application of *Menefield* constitutes the impermissible application of a "new rule" under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

## II.

A state prisoner seeking federal habeas relief cannot benefit from a "new" court-made rule. *See Teague v. Lane*, 489

U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). To determine whether a court-made rule is "new" under *Teague*, a federal habeas court must conduct a three step inquiry. *See O'Dell v. Netherland*, 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).

First, the date on which the defendant's conviction became final is determined. Next, the habeas court considers whether a state court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution. If not, then the rule is new. If the rule is determined to be new, the final step in the *Teague* analysis requires the court to determine whether the rule nonetheless falls within one of the two narrow exceptions to the *Teague* doctrine.

*Id.* at 156–57, 117 S.Ct. 1969 (quotations and citations omitted). The district court's conclusion that the state court's failure to grant Bell counsel for his new trial motion was prejudicial per se did not constitute the impermissible application of a "new rule" under *Teague* because our decision in *Menefield* pre-dates Bell's robbery conviction and, under *Menefield*, a state court considering a request for counsel for a new trial motion made at the time of Bell's request would have felt compelled to conclude that the Constitution and Supreme Court precedent required the appointment of counsel as requested.

## A.

■ The district court did not err under the first part of the *Teague* inquiry because we decided *Menefield* before Bell was arrested let alone convicted for robbery and it has long been established that the denial of a criminal defendant's Sixth Amendment right to counsel is prejudicial per se. *See Menefield*, 881 F.2d at 701 n. 7 (citing *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792,

9 L.Ed.2d 799 (1963)). In other words, there is no issue under the first part of the *Teague* inquiry in this habeas proceeding because Bell is not seeking to avail himself of the benefits of a decision or rule decided or announced after his conviction became final. *See O'Dell*, 521 U.S. at 156, 117 S.Ct. 1969; *Caspari v. Bohlen*, 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). This is true despite the fact that Bell bases his Sixth Amendment claim specifically on Ninth Circuit precedent rather than Supreme Court precedent. *See Gilmore v. Taylor*, 508 U.S. 333, 339–44, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993); *Parke v. Raley*, 506 U.S. 20, 25–26, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).

■ In *Gilmore*, a habeas petitioner sought relief on the ground that a jury instruction given at his trial violated the Due Process Clause of the Fourteenth Amendment. *Gilmore*, 508 U.S. at 335, 113 S.Ct. 2112. The United States Court of Appeals for the Seventh Circuit granted the petitioner habeas relief in light of its decision in *Falconer v. Lane*, 905 F.2d 1129 (7th Cir.1990), a case decided after the petitioner's conviction became final, concluding that *Falconer* did not announce a new rule under *Teague*. *See Gilmore*, 508 U.S. at 339, 113 S.Ct. 2112. The Supreme Court reversed the Seventh Circuit not because *Falconer* was a circuit court case but because *Falconer* was decided after the petitioner's conviction became final and was not "foreordained" by Supreme Court precedent, thereby announcing a new rule under *Teague*. *See id.* at 344, 109 S.Ct. 1060. The Supreme Court stated that "[s]ubject to two narrow exceptions, *a case* that is decided after a defendant's conviction and sentence become final may not provide the basis for federal habeas relief if it announces a 'new rule.'" *Id.* at 399–40, 109 S.Ct. 1060 (quoting *Graham v. Collins*, 506 U.S. 461, 466–67, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993)) (emphasis added). *Gilmore*, therefore, instructs that *Teague* bars the application of circuit court precedent that announces a new rule

and post-dates a petitioner's conviction but does not prevent the application of circuit court precedent that pre-dates a habeas petitioner's conviction.

In *Parke,* the United States Court of Appeals for the Sixth Circuit relied on its decision in *Dunn v. Simmons,* 877 F.2d 1275 (6th Cir.1989), when it granted relief to a habeas petitioner even though *Simmons* was decided after the petitioner's conviction became final. *See Parke,* 506 U.S. at 25–26, 113 S.Ct. 517. The Supreme Court recognized that the case presented a *Teague* issue because the Sixth Circuit relied on precedent that post-dated the petitioner's conviction not because the Sixth Circuit relied on circuit court precedent. *See id.,* 506 U.S. at 26, 113 S.Ct. 517.[2] *Parke,* therefore, further supports the conclusion that *Teague* does not bar the application of circuit court precedents that pre-date a habeas petitioner's conviction. Accordingly, the district court's application of *Menefield* in this habeas proceeding does not constitute the impermissible application of a new rule under the first part of the *Teague* inquiry because the district court applied circuit court precedent that pre-dates Bell's robbery conviction.

### B.

The district court did not err under the second part of the *Teague* inquiry when it relied on *Menefield* because, under our precedent, at the time when Bell's conviction became final a state court would have felt compelled by existing precedent to conclude that the Constitution requires the appointment of counsel for a new trial motion. This is because prior to Bell's conviction we had already conclusively determined that the Constitution and Supreme Court precedent requires the appointment of counsel for a new trial motion, *see Menefield,* 881 F.2d at 697–99, and we are bound by that determination. *See United States v. Gay,* 967 F.2d 322, 327 (9th Cir.1992)

("[O]ne three-judge panel of this court cannot reconsider or overrule the decision of a prior panel.").

■ In *Menefield,* we held "that the right to counsel attaches to the motion for a new trial stage." *Menefield,* 881 F.2d at 699. To reach this holding, we relied exclusively on Supreme Court precedent addressing the Sixth Amendment right to counsel, *see id.* at 698 (citing *Estelle v. Smith,* 451 U.S. 454, 471, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973)), and concluded that "[u]nder *Ash,* although the state trial court expressed doubt as to the significance of the motion, we think there can be little question that the motion for a new trial under California law is a critical stage of the prosecution." *Id.* at 699. We went on to quote the Supreme Court stating that "[t]he presence of trained counsel at [the motion for a new trial] insures that the most favorable arguments will be presented and 'that the accused's interests will be protected consistently with our theory of criminal prosecution.'" *Id.* at 699 (quoting *Wade,* 388 U.S. at 227, 87 S.Ct. 1926.). Thus, in *Menefield,* we conclusively determined that the Sixth Amendment and Supreme Court precedent addressing the Sixth Amendment right to counsel compelled the conclusion that counsel must be appointed for a new trial motion when such counsel is requested.

■ We are bound by *Menefield* and, therefore, we cannot now say that a state court would not have felt compelled by the Constitution and Supreme Court precedent to grant Bell counsel for his new trial

---

**2.** The Supreme Court did not resolve the *Teague* issue presented in *Parke* because the Commonwealth of Kentucky did not argue the

*Teague* issue in the Sixth Circuit. *See Parke,* 506 U.S. at 26, 113 S.Ct. 517.

motion. *Gay,* 967 F.2d at 327. This is true even though other federal courts and state courts have rejected our holding in *Menefield* because a prior decision from this court can only be revisited by a three-judge panel if it has been undermined by an intervening Supreme Court decision. *See Branch v. Tunnell,* 14 F.3d 449, 456 (9th Cir.1994). The California courts, like other federal courts outside of the Ninth Circuit, are free to reject our decision in *Menefield* and persons convicted in state courts are free to petition the Supreme Court to adopt our holding in *Menefield;* however, when a pre-AEDPA habeas petition like Bell's is filed in the Ninth Circuit, we and the district courts in this circuit must follow controlling circuit court precedent like *Menefield* that was "foreordained" by Supreme Court precedent. *See Gilmore,* 508 U.S. at 344, 113 S.Ct. 2112. Application of *Menefield* in this habeas proceeding does not, therefore, offend the second part of the *Teague* inquiry because *Menefield* itself determined that a state court would have felt compelled by the Constitution and Supreme Court precedent to conclude that Bell was entitled to counsel for his new trial motion.

### C.

Our conclusion that the application of *Menefield* in this proceeding does not constitute the impermissible application of a "new rule" under *Teague* is also supported by the simple fact that *Menefield* is a post-*Teague* decision. We decided *Menefield* more than five months after the Supreme Court issued its opinion in *Teague,* but we did not discuss *Teague* in *Menefield.* This demonstrates that we did not view *Teague* as a barrier to granting habeas relief to the petitioner in *Menefield.* If *Teague* did not stand as a barrier to the holding "announced" and applied in *Menefield, Teague* cannot now stand as barrier to the application of *Menefield* the second time around in this habeas proceeding ten years later.

Finally, we feel compelled to note that at the most basic level we must give effect to controlling Ninth Circuit precedent in this habeas proceeding because the determina-

tive issue in this pre-AEDPA proceeding is whether Bell is in state custody in violation of the constitution. *See* 28 U.S.C.A. §§ 2241 and 2254 (West 1994) (amended Apr. 24, by 1996, Pub.L. 104–132). Under controlling Ninth Circuit precedent, Bell is in state custody in violation of the constitution and habeas relief must be granted because Bell was denied his Sixth Amendment right to counsel when the state court denied Bell's request for counsel for his new trial motion. *See Menefield,* 881 F.2d at 701. If we did not affirm the district court's order granting Bell habeas relief and circumvented our express holding in *Menefield,* circuit court precedent would have no precedential value in the pre-AEDPA habeas context. This cannot be the rule of law that governs habeas proceedings that come before this or any other court. The district court did not, therefore, err when it issued an order granting Bell a writ of habeas corpus unless the State of California schedules a motion for a new trial with appointed counsel or a new trial.

**AFFIRMED.**

RYMER, Circuit Judge, dissenting:

I dissent because the rule announced in *Menefield v. Borg,* 881 F.2d 696 (9th Cir. 1989), was not dictated by Supreme Court precedent. A federal writ of habeas corpus cannot issue to a state court based merely on Ninth Circuit case law not dictated by Supreme Court precedent. This violates fundamental principles of federalism. Thus, applying the *Menefield* rule in this case is barred by *Teague* and its progeny.

### I

*Teague* held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). To determine whether a case ap-

plies a "new rule," we are to engage in a three step analysis:

> First, the court must ascertain the date on which the defendant's conviction and sentence became final for *Teague* purposes. Second, the court must "[s]urve[y] the legal landscape as it then existed," *Graham v. Collins, supra,* 506 U.S. at 468, 113 S.Ct. 892, and "determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution," *Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle. *See Gilmore v. Taylor,* 508 U.S. 333, 345, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993).

*Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). In surveying the legal landscape, we must determine whether the rule applied by the district court was *"dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060; *see also Gilmore,* 508 U.S. at 335, 113 S.Ct. 2112 (holding that rule was not "dictated by prior precedent").

The State contends that for purposes of *Teague* analysis, "dictated by prior precedent" means "dictated by then existing *Supreme Court* precedent." I agree. But if this is correct, the district court's application of existing *Ninth Circuit* precedent does not end the analysis. We must then examine whether the Ninth Circuit rule applied by the district court in this case was dictated by Supreme Court precedent; in effect, we must examine whether our prior Ninth Circuit decision was *dictated* by existing Supreme Court precedent. If it were not, as I believe, the district court has applied a "new rule" as defined by *Teague.*

## II

That a habeas court may only issue a writ based upon Supreme Court precedent is a result of our concurrent judicial system. As I noted in my concurrence in *Bates v. Jones,* 131 F.3d 843, 856 (9th Cir.1997), the rule outside of the habeas context is that

> [n]o federal court except for the United States Supreme Court has appellate jurisdiction over final decisions of the California Supreme Court. As the United States Supreme Court made clear in *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), when a state court decides a federal constitutional question that actually arose in the cause before it, its decision is open to reversal or modification by the United States Supreme Court. Unless and until that happens, however, it is an effective and conclusive adjudication.

This, of course, is merely a manifestation of "Our Federalism." *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 760, 27 L.Ed.2d 669 (1971).

Habeas jurisdiction, however, allows the lower federal courts to review the constitutional decisions of state supreme courts in limited circumstances. As the Supreme Court has explained:

> It has long been established, as to those constitutional issues which may properly be raised under § 2254, that even a single federal judge may overturn the judgment of the highest court of a State insofar as it deals with the application of the United States Constitution or laws to the facts in question. As might be imagined, this result was not easily arrived at under the Habeas Corpus Act of 1867, the predecessor to 28 U.S.C. § 2254. But the present doctrine, adumbrated in the Court's opinion in *Moore v. Dempsey,* 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923), and culminating in this Court's opinion in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9

L.Ed.2d 837 (1963), is that the Act of 1867 allows such collateral attack.

*Sumner v. Mata,* 449 U.S. 539, 543–44, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

As the leading treatise on habeas review, after a thorough historical examination, concludes, "when Supreme Court review as of right on writ of error has been unavailable or has provided insufficient protection of federal law against state court resistance, Congress has authorized the federal courts to employ habeas corpus ... as [a] surrogate[ ] for the Court's direct review as of right." 1 JAMES S. LIEBMAN & RANDY HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 2.4e, at 80 (3d ed.1998); *see also* Paul J. Mishkin, *Forward: The High Court, the Great Writ, and the Due Process of Time and Law,* 79 Harv. L.Rev. 56, 86–87 (1965). It is because of this delegation that, while "[s]tate courts are coequal parts of our national judicial system and give serious attention to their responsibilities for enforcing the commands of the Constitution," *Sawyer v. Smith,* 497 U.S. 227, 241, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), when sitting as a habeas court, the lower federal courts may overturn the decisions of state supreme courts.

The principle that the inferior federal courts sitting in habeas jurisdiction act as surrogates for the Supreme Court is one of the normative underpinnings of *Teague.* *See* Tung Yin, *A Better Mousetrap: Procedural Default as a Retroactivity Alternative to* Teague v. Lane *and the Antiterrorism and Effective Death Penalty Act of 1996,* 25 Am. J.Crim. L. 203, 240 (1998). And from this comes the principal that habeas courts must only apply those rules that are *dictated by* Supreme Court precedent. After all, had the state prisoner appeared on a petition for writ of error before the Supreme Court itself, as "sufficed for all [state] prisoners from 1789 until 1815 and 1833," LIEBMAN & HERTZ, *supra,* at 81, the Court would look to its own precedent. *Teague* effectively recognizes that the inferior federal courts, though sitting as surrogates for the Supreme Court, cannot act as the Supreme Court in announcing "new rules"; the inferior courts, as delegates, must apply only those rules dictated by the Court's precedent.

This conclusion is not undermined by either *Gilmore* or *Parke.* In *Gilmore,* the Supreme Court held that the application of a post-conviction Seventh Circuit decision was barred because that decision, *Falconer v. Lane,* 905 F.2d 1129 (7th Cir.1990), was not "foreordained" by "our [the Supreme Court's] precedent." 508 U.S. at 344, 113 S.Ct. 2112. The fact that *Falconer* was circuit court precedent was not the issue. The issue was whether *Falconer* was "dictated by prior precedent." *Id.,* 508 U.S. at 335, 113 S.Ct. 2112.

Similarly, *Parke v. Raley,* 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), does not subvert this analysis because *Parke* does not reach the *Teague* issue. *Id.,* 506 U.S. at 25–26, 113 S.Ct. 517. While the Sixth Circuit relied on a post-conviction Sixth Circuit decision in that case, the state did not argue that *Teague* applied. *Id.* The Court merely recognized that the state failed to do so. It made no comment as to the propriety of or standard for relying on circuit precedent.

Nor does this conclusion conflict with our recent decision in *Ortega v. Roe,* 160 F.3d 534 (9th Cir.1998), *cert. granted,* —— U.S. ——, 119 S.Ct. 1574, 143 L.Ed.2d 669 (1999). In *Ortega,* we held that *United States v. Stearns,* 68 F.3d 328 (9th Cir. 1995), decided post-conviction, did not announce a *Teague* "new rule" because·it was merely an application of a previous circuit decision, *Lozada v. Deeds,* 964 F.2d 956 (9th Cir.1992). We did not examine whether the pre-conviction decision, *Lozada,* was dictated by Supreme Court precedent. But this absence does not imply that the analysis is foreclosed.

In sum, the principles of federalism and comity, combined with a proper conception of habeas jurisdiction, lead me to conclude that a habeas court may only overturn a state supreme court's decision based on

then existing *Supreme Court* precedent. This being the case, we must scrutinize the rule announced in *Menefield* to determine whether it was dictated by Supreme Court precedent.

## III

The fact that *Menefield* was decided before Bell's conviction does not matter. Nor does the fact that we relied exclusively on Supreme Court precedent mean that our decision was dictated by it. All circuit court constitutional decisions are ostensibly a mere extension of Supreme Court precedent. "But the fact that a court says that its decision is within the 'logical compass' of an earlier decision, or indeed that it is 'controlled' by a prior decision, is not conclusive for purposes of deciding whether the current decision is a 'new rule' under *Teague.*" *Butler v. McKellar,* 494 U.S. 407, 415, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). *Teague* and its progeny, therefore, make a distinction between those decisions that announce a rule dictated by Supreme Court case law and those that do not.

Given this, the fact that *Menefield* was decided before Bell's conviction is without consequence. The question is whether the rule applied by the district court, post-conviction, was "new" in the *Teague* sense. Merely because the district court relied upon existing circuit court precedent does not, *per se,* mean that the rule applied was dictated by Supreme Court precedent.

## IV

It is apparent that the rule announced by *Menefield* and applied by the district court was a "new rule" for *Teague* purposes. This comes from an analysis of *Menefield* itself, and the legal landscape as it existed at the time of the state court decision.

In *Menefield* we recognized that "this circuit ha[d] never settled the question of whether a motion for a new trial is a critical stage of the prosecution." 881 F.2d at 698. Instead of turning immediately to a Supreme Court precedent, we "consider[ed] the *factors* enumerated by the Supreme Court." *Id.* (emphasis added). We examined whether a motion for a new trial involved substantive rights, whether skilled counsel would be useful, and whether the proceeding tests the merits of the case. *Id.* at 698–99. We concluded that a motion for a new trial involves substantive rights and tests the merits of the case not by looking to Supreme Court precedent, but rather by interpreting California law. *Id.* at 699. Similarly we did not cite a single Supreme Court case when we held that the waiver of the right to counsel at trial did not prevent a defendant from invoking the right on a motion for a new trial. *Id.* at 700–01.

The legal landscape at the time of Bell's conviction indicates that *Menefield* was not dictated by Supreme Court precedent. As the First Circuit recognized in *United States v. Tajeddini,* 945 F.2d 458 (1st Cir. 1991) (per curiam) (joined by Breyer, J.), the First Circuit, Second Circuit, and District of Columbia Circuit have held that the Sixth Amendment does not require the appointment of counsel on a motion for a new trial. *Id.* at 470. What is more, the California Court of Appeal implied that the California courts would hold that the appointment of counsel for a motion for a new trial would be discretionary, and rejected *Menefield*'s *per se* reversal rule. *See People v. Ngaue,* 229 Cal.App.3d 1115, 280 Cal.Rptr. 757, 761–63 (1991).

"[R]easonable contrary conclusions reached by other courts" is an indicator that the rule was not dictated by Supreme Court precedent. *Butler,* 494 U.S. at 415, 110 S.Ct. 1212. Where there is a circuit split, it is difficult to see why a state court would have "felt compelled by existing precedent to conclude that the rule [sought by Bell] was required by the Constitution." *Caspari,* 510 U.S. at 390, 114 S.Ct. 948. The only justification for so holding would be an assertion that state courts are bound by the precedent of the circuit in whose

territory the State happens to fall. But they aren't.

## V

Based on core principles of federalism, comity and the history of habeas jurisdiction, I would hold that a district court applies a new rule when it applies pre-conviction circuit court precedent that is not dictated by Supreme Court precedent. In this case the rule applied by the district court, as announced in *Menefield,* was not dictated by Supreme Court precedent that pre-dates Bell's conviction. Therefore, I would reverse.