Anthony M. WILLIAMS, Plaintiff,

v.

**LEHIGH DEPARTMENT OF CORRECTIONS, et al., Defendants.**

No. CIV. A. 98–2985.

United States District Court, E.D. Pennsylvania.

Nov. 22, 1999.

Anthony M. Williams, Camphill, PA, pro se.

Leighton Cohen, John P. Servis, Renee L. Cohn, Allentown, PA, for defendant.

### MEMORANDUM & ORDER

KATZ, Senior District Judge.

Before the court is defendants' motion for summary judgment. Because plaintiff has failed to establish a genuine issue of material fact on any of his claims regarding unconstitutional conditions of confinement, the court will grant the motion.

## I. Background and Allegations

Plaintiff Anthony Williams' pro se complaint alleges unconstitutional conditions of confinement in the administrative segregation and disciplinary segregation units at Lehigh County Prison. Named defendants are the Lehigh County Department of Corrections, Warden Edward Sweeney, and Director Richard Klotz. Although plaintiff designated this complaint as a class action, the court denied a motion seeking class certification. *See* Order of September 9, 1998.

According to the documents submitted by the defendants, disciplinary segregation was "established to house inmates who have violated one or more institutional rules, to correct their behavior and to deter a future recurrence." *See* Def. Ex. B. Inmates in disciplinary segregation have more significant restrictions on their actions than do general population prisoners. In contrast, administrative segregation was established "to ensure the safety of inmates so-classified," staff, and other inmates and "shall not be punitive in na-

ture." *See* Def. Ex. C.[1] Inmates in administrative segregation are to be provided "generally equal living conditions and privileges of the general population except their freedom of movement" or where security issues warrant otherwise. *Id.* Mr. Williams was never on administrative segregation, but he spent a great deal of time in disciplinary segregation for a variety of different infractions of prison regulations. *See* Def. Ex. A. Mr. Williams is no longer housed at the Lehigh County Prison—as of October 8, 1998, he was transferred to SCI Graterford. *See* Def. Ex. A ¶ 14 (Aff. of Edward Sweeney).

Mr. Williams asserts that the following seven aspects of the segregated units violated the Eighth Amendment:

1. Placement on disciplinary segregation limits direct access to the prison law library; inmates must fill out a request form to acquire legal materials.

2. Disciplinary segregation inmates receive inadequate clothing and footwear for winter weather.

3. The food provided to inmates in disciplinary and administrative segregation is inadequate.

4. The housing of mentally ill inmates with other inmates in disciplinary

segregation creates an unacceptably high level of noise.

5. The guards tour the disciplinary segregation unit infrequently, creating safety risks and making it difficult for inmates to receive medical assistance.

6. Disciplinary segregation inmates are deprived of mental stimulation because they are barred from having any reading material except religious books.

7. Disciplinary segregation inmates who are designated as aggressive are restricted to only two showers a week and two shaves a week and are forced to wear restraints when in the exercise yard.

*See* Compl. ¶¶ 6–12. Plaintiff seeks declaratory and other appropriate relief.

## II. Discussion[2]

Defendants argue that plaintiff has failed to produce evidence sufficient to support Eighth Amendment claims based on conditions of confinement, that defendants Klotz and Sweeney are entitled to qualified immunity, and that there is no evidence that a custom, policy, or practice of Lehigh County caused injury to plain-

---

1. Administrative segregation houses inmates who
   have the potential to be victims within the general population; have an institutional history of violence and/or predatorial conduct; are pending a misconduct and are deemed to be a threat to others or to institutional order; are returning to general population from Disciplinary Segregation and require closer supervision prior to full integration; are considered escape risks; are pending transfer to another facility; or for other reasons as determined by the Warden.
   Def. Ex. C.

2. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The

moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See id.* However, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548.

tiff.[3] As the court finds that there was no unconstitutional condition of confinement, the court will grant summary judgment.

### A. Administrative Segregation

█ The court will grant summary judgment on all claims pertaining to administrative segregation, as the evidence of record indicates that Mr. Williams was never on administrative segregation and thus suffered no injury.

### B. Disciplinary Segregation Claims

█ Mr. Williams brings these claims under the Eighth Amendment's prohibition against cruel and unusual punishment. As has been often-quoted, "what constitutes cruel and unusual punishment is measured by the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens,* 907 F.2d 418, 426 (3d Cir.1990) (citations, punctuation omitted). Notwithstanding the punitive aspects of a prison sentence, the "prison environment itself may not be so brutal or unhealthy as to be in itself a punishment." *Id.* at 426. The court, however, does not have leeway to impose its own ideas of proper prison policy; rather, it must determine whether an inmate has been deprived of "the minimal civilized measure of life's necessities." *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1971)).

█ To establish an Eighth Amendment violation for conditions of confinement, "an inmate must allege both an objective element—that the deprivation was sufficient serious—and a subjective element—that a prison official acted with a sufficiently culpable state of mind, i.e. deliberate indifference." *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996) (relying on

*Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Young v. Quinlan,* 960 F.2d 351, 360–61 (3d Cir.1992)) (describing deliberate indifference as occurring when an official knows or should have known of a sufficiently serious danger to an inmate). In making this evaluation, the court should consider the totality of the institution's conditions, *see Nami,* 82 F.3d at 67; *Tillery,* 907 F.2d at 426, including "food, medical care, sanitation, control of vermin, lighting, heating, ventilation, noise level, bedding, furniture, education and rehabilitation programs, safety and security and staffing." *Tillery,* 907 F.2d at 427. Problems that may not rise to the level of an Eighth Amendment violation when taken in isolation may, in combination, violate the Constitution.

█ It is not a per se violation of the Eighth Amendment to punish infractions of prison regulations. *See, e.g., Young,* 960 F.2d at 364 (noting that prison officials may punish so long as they do not harm the health of prisoners). So long as the punitive actions are reasonably related to a legitimate penal objective, there is no violation of the Eighth Amendment. *See, e.g., Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (noting that "preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of ... convicted prisoners"). Only if the plaintiff demonstrates that the prison officials have exaggerated their response to security issues or they have acted unreasonably may the court intervene. *See, e.g., Loe v. Wilkinson,* 604 F.Supp. 130, 134 (M.D.Pa.1984).

---

**3.** The Prison Litigation Reform Act requires that prisoners exhaust administrative remedies before they can bring a claim under 42 U.S.C. § 1983 regarding conditions of confinement. *See* 42 U.S.C. § 1997e(a); *see also Jones v. Culinary Manager II,* 30 F.Supp.2d 491, 494–95 (E.D.Pa.1998) (dismissing prisoner's case except for incidents occurring be-

fore enactment of Act because of failure to exhaust internal remedies). In this case, however, the defendants have not raised this argument and the court has no way of knowing what remedies exist for complaints pertaining to disciplinary segregation or whether plaintiff attempted to utilize them. Consequently, the court will not rule on this basis.

In this case, while each of the concerns expressed by plaintiff's complaint are included in the Eighth Amendment's protections, none are sufficiently serious to constitute a constitutional violation given their short duration and their relation to legitimate prison interests.

First, plaintiff has not demonstrated any impropriety in limiting prisoners in the segregation unit to slippers. *See* Def. Ex. B ¶ 2(a) (regulations on clothing); *Loe*, 604 F.Supp. at 135 (finding such limitation reasonable because of prisoners' habit of throwing hard-soled shoes at prison staff). While the court agrees that forcing prisoners to wear inadequate shoes or clothing outside in the winter could run afoul of the Eighth Amendment, Lehigh Prison's policies state that the prisoners are permitted to engage in indoor recreation in inclement weather. *See id.* ¶¶ 4(a), 4(c). As Mr. Williams provides no evidence to suggest that prisoners are put in the position of either losing their recreational privileges or having to go outside in improper clothing, no Eighth Amendment violation is present in the fact that inmates in disciplinary segregation receive cloth slippers. Similarly, while Mr. Williams complains about the clothing received, he does not describe any facts that would lead to the conclusion that the health of the wearer is endangered. *See, e.g., Young v. Berks County Prison*, 940 F.Supp. 121, 123–24 (E.D.Pa.1996) (noting that there was no Eighth Amendment violation when inmate's clothing was occasionally dirty or torn so long as health was not imperilled).

Similarly, there is no violation of the Eighth Amendment in the temporary restrictions placed on inmate's reading material and access to the law library. With respect to the library access, which should more properly be articulated as a First Amendment access to court claim, there are no "free-standing rights to a law library or legal assistance"; rather, libraries and other assistance are simply the means by which prisoners gain their right of access to the court. *Reynolds v. Wag-ner*, 128 F.3d 166, 183 (3d Cir.1997) (describing holding of *Lewis v. Casey*, 518 U.S. 343, 351–55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)). To bring a viable claim, an inmate must show "direct injury" to his access to court. *See id.* In this case, Mr. Williams makes no argument that he was unable to raise a claim he wished to raise or that his efforts in any pending action were prejudiced because of his inability to acquire needed materials. Moreover, plaintiff's own complaint acknowledges the prison regulations that permitted him to receive legal materials from the library by filling out a request form, *see* Def. Ex. B ¶ 23, and there is no evidence that this system deprived him of needed information.

Mr. Williams other objections can be disposed of quickly. Although plaintiff complains about the amount of food received, the defendants have submitted documentation that the food meets the required caloric and nutritional standards. They have also submitted a memorandum indicating why inmates in one housing unit did not receive drinks with meals for some time period and how appropriate substitutions were determined. *See* Def. Ex. E, F (stating that meals met requirements); Def. Ex. G (explaining why unit received substitutes for drinks at mealtimes). The complaints about the noise and the failure of guards to tour regularly must be rejected because of the lack of specificity in the evidence submitted by Mr. Williams. While excessive noise might, in some circumstances, violate the Eighth Amendment, Mr. Williams does not provide any basis for the court to find that the level of noise was so excessive as to comprise such a violation. Similarly, Mr. Williams does not articulate any harm he suffered from the alleged failure of the prison officials to tour the unit. The regulations indicate that the officers are to tour at least once every thirty minutes, and he does not provide any specific claim that this standard was not met or that it is an unreasonable

standard. *See* Def. Ex. B ¶ 27 (regulations regarding monitoring of prisoners).

Finally, as to plaintiff's complaints regarding limited showers, shaves, and other restrictions placed on inmates designated as habitually "aggressive, assaultive, or destructive," Def. Ex. B ¶ 5(c), there is no basis to believe that Mr. Williams' health or hygiene suffered from the limited showers and shaving opportunities. Nor is there any claim that he was hampered in his exercise. Thus, the court cannot say that an Eighth Amendment violation occurred based on these regulations.

In short, the court finds there was no Eighth Amendment violation even though plaintiff's library access was limited and he was subject to certain other restrictions when placed on disciplinary segregation. *See Loe,* 604 F.Supp. at 136 (finding no Eighth Amendment violation in similar circumstances); *Griffin v. Vaughn,* 112 F.3d 703 (3d Cir.1997) (finding no Eighth Amendment violation when similar, though not identical, restrictions were put on inmate placed in administrative detention for fifteen months). Moreover, plaintiff has not even attempted to articulate any basis for finding that the defendants' mental state rose to the level of deliberate indifference required.[4]

## III. Conclusion

Mr. Williams' allegations do not describe an Eighth Amendment violation, and this complaint must be dismissed.

---

4. As mentioned earlier, defendant Lehigh County Department of Corrections argues that it cannot be held liable under the principles articulated in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The court agrees. While there is no doubt but that plaintiff is challenging official policies, as there was no constitutionally cognizable injury to him, *Monell* and its progeny preclude judgment against the Department of Corrections. *See id.* at 690–95, 98 S.Ct. 2018 (generally discussing need for injury to have occurred); *see also Canton v. Harris,* 489 U.S. 378, 385, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (generally discussing need for municipal defendant to have caused an injury). Also, Warden Sweeney and Director Klotz seek a ruling of qualified immunity. To the extent that these defendants are sued in their official capacities, qualified immunity does not protect them. *See, e.g., W.B. v. Matula,* 67 F.3d 484, 499 (3d Cir.1995). Also, as the plaintiff appears to seek only prospective relief, Eleventh Amendment immunity does not apply. *See, e.g., Cuffeld v. Supreme Court of Pennsylvania,* 936 F.Supp. 266, 272 (E.D.Pa. 1996). Similarly, as to any suit against the officials in their individual capacities, the Third Circuit has explained that the "defense of qualified official immunity ... is inapplicable to claims for prospective relief." *Prisco v. United States Dep't of Justice,* 851 F.2d 93, 95 (3d Cir.1988).

Insofar as plaintiff seeks other relief against the defendants in their individual capacities, however, as the court finds that plaintiff has not alleged any constitutional violation, "[i]t follows that defendants did not deprive plaintiff of a clearly established constitutional right of which reasonable prison officials should have been aware in light of existing law and factual information available to them." *Africa v. Horn,* 998 F.Supp. 557, 560 n. 3 (E.D.Pa.1998) (citing *Anderson v. Creighton,* 483 U.S. 635, 639–41, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also W.B. v. Matula,* 67 F.3d 484, 499 (3d Cir.1995)) (stating that defendants are not liable if the conduct does not violate rights of which a reasonable person would have known). Also, the plaintiff does not assert any personal involvement by these individuals in the actions that allegedly violated his rights. Although this point would be moot if the defendants were determined to be policymakers, to the extent that plaintiff alleges violations of the Lehigh prison's policies by prison guards, for example, this lack of personal involvement would also be fatal to plaintiff's case. *See, e.g., Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988).