John Thomas RYAN, Petitioner,

v.

UNITED STATES of America,
Respondent.

Nos. 97–10867–DPW, 97–10868–
DPW, 97–10969–JLT.

United States District Court,
D. Massachusetts.

May 9, 2000.

John T. Ryan, U.S.P. Leavenworth,
Leavenworth, KS, petitioner pro se.

Michael J. Pelgro, United States Attorney's Office, Boston, MA, for United
States of America, respondent.

## MEMORANDUM

TAURO and WOODLOCK, District
Judges.

Pro se Petitioner John Ryan brings
these habeas corpus actions under 28
U.S.C. § 2255 to vacate concurrent criminal sentences. He is presently serving a
210 month prison term for bank robbery,
kidnapping and firearm possession offenses, to which he pled guilty in 1992. In
his § 2255 motions, Petitioner attacks
these sentences, arguing that we separately adopted an incorrect sentencing guideline range recommendation from the probation department's presentence report
("PSR").

## I. BACKGROUND

Between October 16, 1990 and April 17,
1991, Petitioner, posing as an FBI agent,

robbed three separate banks in Connecticut, Pennsylvania, and Massachusetts (and illegally possessed a firearm in Maine). After his April 24, 1991 arrest, Petitioner admitted involvement in the Massachusetts and Pennsylvania robberies.

On May 26, 1992, just before jury selection was to begin before Judge Tauro in Criminal No. 91–10170–JLT, Petitioner indicated a willingness to plead guilty to the Massachusetts counts so long as he could resolve the three outstanding cases from other jurisdictions in the same agreement.[1] After discussing matters with the Connecticut, Maine, and Pennsylvania U.S. Attorneys, and with Petitioner, the Government agreed to make a joint recommendation of 210 months (17 years and sixth months) incarceration in return for Petitioner's guilty plea in all outstanding cases. The government also agreed to make a motion for downward departure if the low end of the applicable guideline sentencing range exceeded 210 months.

Petitioner then pled guilty, following an extended plea colloquy, to the Massachusetts indictment, with the understanding that he would plead guilty to the indictments from the other three jurisdictions (Connecticut, Pennsylvania, and Maine) once those jurisdictions delivered their indictment papers to Massachusetts via Fed. R.Crim.P. 20(b). *See* May 26, 1992 Hr'g Tr. at 11.

In papers filed prior to Petitioner's September 1, 1992 sentencing hearing, and at the hearing itself, Petitioner: (1) asked to withdraw his Massachusetts guilty plea, arguing that he was not competent at the time of the Rule 11 hearing; (2) refused,

contrary to the verbal plea agreement, to plead guilty to the three indictments from other jurisdictions; (3) asked for both a downward departure because of diminished capacity and for another competency examination; and (4) opposed the PSR's designation of Petitioner as a "career offender" for guideline calculation purposes.

Judge Tauro denied Petitioner's attempts to withdraw his guilty plea or dispute the career offender designation, and adopted the guideline calculations in the PSR, which set Petitioner's guideline range at 360 months to life. Consistent with the earlier plea agreement, the Government moved for a downward departure. Judge Tauro then sentenced Petitioner, pursuant to the downward departure motion and verbal plea agreement, to 210 months incarceration, 60 months supervised release, and a $200 special assessment.

■ Following sentencing, Petitioner again changed his mind and expressed a renewed desire to plead guilty in Massachusetts to the three indictments from other jurisdictions. At a September 10, 1992 hearing, Judge Tauro refused to entertain those guilty pleas. The cases were then consolidated for plea and disposition before Judge Woodlock. On November 2, 1992, Petitioner pled guilty, following an extended plea colloquy, before Judge Woodlock to the Pennsylvania robbery, Criminal No. 92–10232–DPW, and Maine firearms case, Criminal No. 92–10188–DPW, and tendered an *Alford* plea to the Connecticut robbery, Criminal No.

1. Petitioner was charged in the Massachusetts indictment with four counts including: false imprisonment under 18 U.S.C. § 912; armed bank robbery under 18 U.S.C. § 2113(d); using or carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1); and kidnapping under 18 U.S.C. § 2113(e). *See* PSR, Docket No. CR–91–10170 at ¶ 16. The Connecticut indictment contained one count of conspiracy to commit bank robbery under 18 U.S.C. § 371 and one

count of aiding and abetting and armed bank robbery under 18 U.S.C. §§ 2 and 2113(d). *See* PSR, Docket No. CR–91–10170 at ¶ 17. The Middle District of Pennsylvania one count indictment charged Petitioner with armed bank robber in violation of 18 U.S.C. § 2113(d) and (e). *See* PSR, Docket No. CR–91–10170 at ¶ 17. Finally, the District of Maine charged Petitioner as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See* PSR, Docket No. CR–91–10170 at ¶ 17.

92–10227–DPW.[2] *See* November 2, 1992 Hr'g Tr. at 46–47. After Petitioner acknowledged understanding the prior plea agreement, Judge Woodlock accepted the negotiated plea agreement and joint recommendation, and imposed a 210 month sentence, to run concurrently with the sentence imposed by Judge Tauro in the Massachusetts case.

## II. DISCUSSION

Petitioner's motions for relief under 28 U.S.C. § 2255 [3] seek a reduction of his 210 month sentence of imprisonment. Petitioner argues that we, in sentencing him, relied upon an incorrect range under the United States Sentencing Guidelines because the PSR wrongfully designated him a "career offender." Petitioner further asserts that his failure to pursue this error on direct appeal was the result of ineffective assistance of counsel.[4] For the reasons discussed below, Petitioner's § 2255 motion to vacate is DENIED.[5]

### A. Motion to Vacate Sentence Under § 2255.

■ Habeas Corpus relief under 28 U.S.C. § 2255 is available to vacate a sentence where (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction; (3) the sentence exceeded the maximum permitted by law; or (4) the sentence is otherwise subject to collateral attack. *See id.; Knight v. United States*, 37 F.3d 769, 771 (1st Cir.1994). Petitioner's motions to vacate his sentences, read liberally,[6] make two distinct challenges. First, he challenges our reliance on an allegedly erroneous PSR sentencing guideline recommendation. Second, he ostensibly challenges his counsel's failure to file a direct appeal of this alleged error. Under either reading, Petitioner's motions fail.

### 1. The Alleged Sentencing Error

■ The Supreme Court, in interpreting the language of § 2255, has narrowly confined its scope to claims alleging constitutional or jurisdictional errors and other errors where there is a complete miscarriage of justice.[7] *See Knight*, 37 F.3d at 772 (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). "Several circuit courts have considered the availability of collateral attack for various errors in the application of the sentencing guidelines and have concluded that such errors are not cognizable under § 2255." *Id.* at 773 (citing *United States*

---

**2.** In an *Alford* plea, "the defendant concedes that the prosecutor could prove certain facts without conceding that these things happened." *Hugi v. United States*, 164 F.3d 378, 381 (7th Cir.1999) (citing *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)).

**3.** Apparently as a result of inadvertence, Petitioner has not filed a § 2255 motion as to the Pennsylvania robbery case, Criminal No. 92–10232. Because the sentences are concurrent in his four cases, he could not receive the relief he seeks in the absence of a § 2255 petition in the Pennsylvania robbery case. The point is academic, however, as none of his § 2255 petitions are meritorious.

**4.** Petitioner also makes unsubstantiated assertions that he was deprived of certain psychiatric information. According to the record, Petitioner received all material psychiatric information developed prior to the plea.

**5.** We reach this decision without conducting evidentiary hearings because the record "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. *See also Barrett v. United States*, 965 F.2d 1184, 1195 (1st Cir.1992) (court may dismiss § 2255 petition without evidentiary hearing if claims are inadequate on their face).

**6.** Pro se petitions are generally read with deference to the petitioner's lack of formal legal training. *See Maleng v. Cook*, 490 U.S. 488, 493, 109 S.Ct. 1923, 1927, 104 L.Ed.2d 540 (1989) (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

**7.** As a result of these limitations, "[e]rrors warranting a reversal on direct appeal will not necessarily support a collateral attack." *Knight*, 37 F.3d at 772 (citing *United States v. Addonizio*, 442 U.S. 178, 183–84, 99 S.Ct. 2235, 2239–40, 60 L.Ed.2d 805 (1979)).

*v. Faubion*, 19 F.3d 226, 232–33 (5th Cir. 1994); *Scott v. United States*, 997 F.2d 340, 341–42 (7th Cir.1993); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). *See also Grant v. United States*, 72 F.3d 503, 506 (6th Cir.1996) (stating that an error in application of the sentencing guidelines is rarely grounds for § 2255 relief). While the First Circuit has not adopted a per se rule, the court in *Knight* found that an alleged error in applying the guidelines did not constitute a complete miscarriage of justice and thus could not be raised under § 2255. *Knight*, 37 F.3d at 773. Furthermore, the error in *Knight* was the same alleged here—the petitioner claimed that prior state and federal offenses were "related" and thus could not both be used in calculating his criminal history. *Id.* at 771–72. Petitioner provides no evidence to distinguish the alleged error in his sentence from that in *Knight*, nor does he provide any other basis for us to find that a complete miscarriage of justice took place. As such, Petitioner cannot show that he can advance this claim under § 2255.[8]

### 2. Challenging the Failure to Appeal

Although Petitioner cannot raise the alleged sentencing error under § 2255, by claiming ineffective assistance of counsel as the basis for his failure to directly appeal, his petition can be read as attacking the waiver of his right to appeal rather than the underlying error in the sentence.

Generally, a claim of ineffective assistance of counsel is resolved by application of the widely accepted, two pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, the court must determine (1) whether the "counsel's performance fell below an objective standard of reasonableness" and (2) whether the defendant "was prejudiced by [counsel's] errors." *Knight*, 37 F.3d at 774. If the petitioner meets the *Strickland* standard, the court must vacate his sentence and resentence him. *See Bonneau v. United States*, 961 F.2d 17, 23 (1st Cir. 1992).

Until recently, the First Circuit followed a rule in habeas corpus actions finding per se ineffective assistance of counsel where the defense attorney failed to file a direct appeal, absent an express waiver by the defendant. *See United States v. Tajeddini*, 945 F.2d 458, 466 (1st Cir.1991). Under *Tajeddini*, a petitioner was presumed to be prejudiced by his attorney's failure to appeal, and was relieved of the requirements of *Strickland*. *See Tajeddini*, 945 F.2d at 468. Utilizing the First Circuit's *Tajeddini* presumption, if a petitioner proved that he did not affirmatively waive his right to appeal, then that right was restored—the sentence was vacated—and the sentencing court would then resentence the petitioner so that he could take a direct appeal on whatever grounds he chose. *See Bonneau*, 961 F.2d at 23 (dismissal of § 2255 petition vacated and matter remanded for resentencing so that petitioner could take direct appeal).

Petitioner in this case argues that his failure to appeal was the result of ineffective assistance of counsel,[9] a claim that

---

8. It is worth noting that, even if Petitioner's sentencing error was cognizable under § 2255, he would face the additional bar imposed upon claims that are not directly appealed. "Normally, failure to raise a constitutional [or jurisdictional] issue on direct appeal will bar raising the issue on collateral attack unless the defendant can show cause for the failure and actual prejudice." *Knight*, 37 F.3d at 774 (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991)). Because Petitioner did not raise the alleged guideline error on direct appeal, he must

demonstrate cause and prejudice for this failure. Petitioner arguably side-steps this procedural bar, however, by asserting ineffective assistance of counsel as the basis for his failure to appeal. *See id.* As a practical matter, this effectively turns Plaintiff's petition into a challenge of his waiver of appeal rather than a challenge of the sentence itself, which is discussed below.

9. Petitioner does not argue that the alleged defect in his sentence, the "career offender" designation, was the result of ineffective assistance. Indeed, Petitioner concedes that coun-

arguably brings him within the framework established by *Tajeddini*. The per se treatment afforded under *Tajeddini*, however, was recently abrogated by the Supreme Court in *Roe v. Flores–Ortega*, —— U.S. ——, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).[10] The Court in *Flores–Ortega* held that a § 2255 petition asserting ineffective assistance of counsel as the basis for a failure to appeal must actually establish ineffective assistance under *Strickland*, and cannot benefit from *Tajeddini's* presumption of prejudice. *See Flores–Ortega*, —— U.S. at —— - ——, 120 S.Ct. at 1035–36. The Court then set forth criteria for applying the *Strickland* two prong test in this context.

First, to determine whether counsel's assistance was reasonable, the determinative question is whether the attorney had a duty to consult with the defendant about the advantages and disadvantages of appeal, and then determine whether the defendant wished to pursue one.[11] *See Flores–Ortega*, —— U.S. at ——, 120 S.Ct. at 1035. The Court answered the question by holding that there is a

> constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 1036. In making this inquiry, a court should examine the totality of the circumstances, and consider all the information that the attorney knew or should have known. *See id.* Two important considerations will be whether the conviction was the result of a guilty plea, and whether the petitioner received the sentence bargained for. *See id.* A guilty plea is probative because it reduces the potential for appealable issues and indicates a desire to terminate judicial proceedings. *See id.* A defendant who received the benefit of a bargained for sentence would presumably have little interest in pursuing an appeal.

The second prong of *Strickland*, the requirement of prejudice, translates in this context to a showing that, but for counsel's failure to consult about an appeal, Petitioner would have timely appealed. *See Flores–Ortega*, —— U.S. at ——, 120 S.Ct. at 1038. As with the first prong of *Strickland*, the Court noted that relevant factors to consider may include whether there were nonfrivolous grounds for appeal, or whether the defendant promptly expressed a desire to appeal. *See Flores–Ortega*, —— U.S. at ——, 120 S.Ct. at 1039.

**B. Applying the *Strickland* Standard to Petitioner's § 2255 Claim.**

 Under the regime established by *Flores–Ortega*, Petitioner must demonstrate, first that his attorney had a duty to consult with him regarding his right to appeal, and second that he would have appealed but for counsel's failure to perform that duty. Petitioner cannot meet these burdens.

1. Petitioner cannot establish the counsel had a duty to consult regarding his right to appeal.

Under the first prong of the *Strickland* test, Petitioner must establish that his counsel had, and breached, a duty to consult with him regarding the right to appeal his sentences. *See Flores–Ortega*, —— U.S. at ——, 120 S.Ct. at 1036. In this

sel filed objections and supporting memorandum to the PSR and raised those objections again at sentencing. *See* Petitioner's Mem. in Supp. at 12.

**10.** The Court rejected the per se rule imposed by both the First and Ninth Circuits. *See id.* at 1035–36.

**11.** "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *See Flores–Ortega*, —— U.S. at ——, 120 S.Ct. at 1035.

case there is no dispute that Petitioner's counsel, Charles McGinty, did not consult with Petitioner.[12] *See* McGinty Aff. at ¶ 2. The only issue, therefore, is whether he had a duty to do so. Such a duty exists where a rational defendant would want to appeal, or the particular defendant has demonstrated to counsel an interest in appealing. *See Flores–Ortega,* —— U.S. at ——, 120 S.Ct. at 1036. Whether the duty applies is determined by examining the totality of the circumstances. *See id.*

a. Petitioner cannot show that a rational defendant would want to appeal.

Petitioner's conviction was the result of a guilty plea. As the Supreme Court noted, this type of disposition suggests that the defendant wished to terminate judicial proceedings, and not pursue further litigation. *See id.* Moreover, Petitioner's sentences were the result of hard bargaining with four separate jurisdictions. His plea resolved charges of: false impersonation; aiding and abetting; conspiracy to commit bank robbery; armed bank robbery (three counts); use of a firearm during a crime of violence; felon in possession of a firearm; and kidnapping. *See* PSR, Docket No. CR–91–10170 at ¶ 19. Notwithstanding any alleged error in applying the sentencing guidelines, Petitioner faced a mandatory minimum sentence of 180 months on the Massachusetts counts alone (ten years on the kidnapping count and five years, from and after, on the use or carrying of a firearm during crime of violence charge). *See id.* In addition, each armed bank robbery count (a total of three) carried a maximum sentence of 25 years. *See id.*

The other counts together (assuming consecutive sentences) carried a maximum term of 18 years. Petitioner's plea agreement of 210 months thus avoided his exposure to a precipitously long term of imprisonment. That Petitioner pled guilty and received the relatively lenient sentences bargained for weighs strongly against a finding that a rational defendant would wish to appeal.[13] *See Flores–Ortega,* —— U.S. at ——, 120 S.Ct. at 1036.

The Supreme Court also stated that the existence of a non-frivolous issue for appeal suggests that a rational defendant would wish to pursue one. Here, however, Petitioner's basis for attacking his sentences is patently frivolous, because any error was harmless. Petitioner asserts that this court adopted the incorrect guideline range in sentencing him. As the First Circuit has held, an error in applying the guidelines may "prove harmless [where] the district court might clearly indicate that the applicable guideline sentencing range had nothing to do with the sentence actually imposed." *United States v. Plaza–Garcia,* 914 F.2d 345, 347 (1st Cir.1990). Likewise, "an error in applying the guidelines may prove to be harmless if the court makes clear that it would have departed to the same sentence regardless of the exact guideline range." *United States v. Carrozza,* 4 F.3d 70, 88 (1st Cir. 1993).

Here, Petitioner argues that application of the "career offender" designation was inappropriate and thus the proper guideline range was 180 to 235 months,[14] as

12. Attorney McGinty submitted an affidavit pursuant to Judge Tauro's order of February 10, 1999. This order was issued because the memorandum submitted by Petitioner did not offer any evidence to support his claim of ineffective assistance. It directed McGinty to memorialize any discussions with Petitioner regarding Petitioner's appellate rights.

13. Moreover, the practice of Attorney McGinty supports such a finding. He submits that while he is "ordinarily careful in advising a defendant regarding possible appeal of a sen-

tence, [he does] not do so in connection with dispositions under Fed.R.Crim.P. 11(e)(1)(c) where, as here, the Court accepts the jointly urged recommendation of the parties." McGinty Aff. at ¶ 2.

14. In a handwritten addition to his memorandum, Petitioner further asserts that he deserved a two to three point reduction for acceptance of responsibility, making the appropriate range 121–151 months. *See* Petitioner's Mem. in Supp. at 3. Because Plaintiff did not accept full responsibility for the Con-

opposed to the range of 360 months to life accepted by us. Even assuming that we adopted the improper range, the record shows that the sentence of 210 months was arrived at without reliance upon the sentencing range suggested by the probation department. Indeed, the 210 month joint recommendation was reached without regard to a specific guideline range. Attorney McGinty stated in the sentencing hearing before Judge Woodlock: "I think the 210 [months] ... was the result of what amounted to hard bargaining.... I don't want to pretend that we had any specially careful way of calculating this or forging [it] out of respect for the Guidelines." November 2, 1992 Hr'g Tr. at 41–42. The joint recommendation itself was crafted so as to arrive at a sentence of 210 months regardless of what sentencing range was adopted by the court. To reach this figure, the Government agreed to recommend a downward departure to 210 months should the court arrive at a sentencing range with a low end greater than 210. Even if the 180 to 235 month range was appropriate, we would not have imposed a sentence below the agreed upon term of 210 months, given that the joint recommendation was designed to resolve *all* outstanding charges.[15]

Taken together, these circumstances suggest no basis for finding that a rational petitioner would have wished to appeal.

### b. Petitioner presents no evidence that he wished to appeal.

In addition, there is nothing on the record to suggest that Petitioner himself reasonably demonstrated an interest in appealing his sentences. Attorney McGinty's affidavit does not indicate that Petitioner expressed a desire to appeal his sentences, despite the fact that the two talked about appealing the court's denial of his motion for a competency hearing and a possible appeal of his motion to vacate his plea. *See* McGinty Aff. at ¶ 2. Had Petitioner showed interest in appealing, that information should have been included in the affidavit. *See* Order, February 10, 1999 (instructing McGinty to describe his communications with Petitioner regarding his right to appeal his sentence). While Petitioner might argue that by vacillating over whether or not to plead guilty he demonstrated a likely interest in appealing, such an argument is refuted by Petitioner's final decision to tender a guilty plea on all counts.[16] Finally, Petitioner has not made any claim himself that he had any interest in filing an appeal. There is nothing in the record, therefore, to suggest that Plaintiff wished to appeal at any time prior to filing the pending habeas petition, *more than four years after his sentencing.*

### 2. Petitioner cannot show that he would have appealed, but for the alleged ineffective assistance.

The second prong of *Strickland* requires Petitioner to establish that he would have appealed his sentences, but for the ineffective assistance of his counsel. *See Flores–Ortega,* —— U.S. at ——, 120 S.Ct. at 1037. As the Court noted in *Flores–Ortega,*

---

necticut robbery, this reduction is not available. *See United States v. Burns,* 925 F.2d 18, 20 (1st Cir.1991) (discussing per se rule denying reduction for acceptance of responsibility where defendant tenders an *Alford* plea).

**15.** As Attorney McGinty put it, "this is a package agreement with respect to resolution of all of the matters that are outstanding, and it is with that understanding [that] the defendant is tendering a plea today to the Massachusetts indictment." May 26, 1992 Hr'g Tr. at 14.

**16.** The exact chain of events are as follows: Petitioner moved to vacate his guilty plea when he appeared for sentencing on September 1, 1992. *See* Petitioner's Mem. in Supp. at 5. That motion was denied. At a subsequent hearing on September 10, 1992, Petitioner expressed a change of heart, wishing to tender a plea to the indictments from Pennsylvania, Connecticut and Maine. *See id.* at 6. Those cases were consolidated and transferred to Judge Woodlock, whose sentence followed the joint recommendation of 210 months. *See id.*

many of the same factors used to assess the first prong are probative in determining whether a petitioner can meet this second requirement. *See id.* at 1039. Here, Petitioner has failed to show that his counsel had a duty to consult with him about his right to appeal. For the same reasons underlying that determination, we also concludes that Petitioner cannot establish that he would have appealed his sentences but for the alleged ineffective assistance.

Under the standards announced in *Flores–Ortega,* Petitioner cannot show that his failure to appeal was caused by ineffective assistance of counsel.

### III. CONCLUSION

Petitioner has failed to demonstrate that the alleged sentencing error is cognizable under 28 U.S.C. § 2255. Furthermore, he cannot show that his failure to appeal that error was the result of ineffective assistance by Attorney McGinty. As such, the habeas corpus petitions to vacate his sentences are DENIED.

AN ORDER SHALL ISSUE.