UNITED STATES of America

v.

Elvin A. MARTINEZ.

No. CR. 00–196E.

United States District Court,
W.D. Pennsylvania.

Nov. 16, 2000.

Elvin A. Martinez, Lisbon, OH, pro se.

John Trucilla, AUSA, U.S. Attorney's Office, Erie, PA, for U.S.

## MEMORANDUM OPINION and ORDER

COHILL, Senior District Judge.

Petitioner Elvin A. Martinez seeks habeas corpus relief pursuant to 28 U.S.C. § 2255 to vacate his guilty plea and sentence. He is presently serving a 72 month term of imprisonment for conspiracy to possess with intent to distribute cocaine base, to which he pled guilty. In his section 2255 motion, Petitioner, whose native language is Spanish, alleges that his counsel was ineffective in failing to communicate the nature of court proceedings as a result of which he did not fully understand the proceedings and could not assist in his defense. He also asserts that counsel was ineffective in failing to file an appeal. Because we find that Petitioner's counsel was not ineffective, his petition will be denied. We will also deny Petitioner's request for an evidentiary hearing as the record conclusively establishes that the Petitioner is not entitled to the relief sought in the petition. 28 U.S.C. § 2255.

Petitioner was named, along with his brother Samuel Martinez, in a two count indictment charging conspiracy and possession with intent to distribute crack cocaine. At his initial appearance on December 7, 1998, the Magistrate Judge provided both Petitioner and his brother with an interpreter, Helen Cranston. See Record of Magistrate's Proceeding (Doc. No. 3); Order (Doc. No. 28) (ordering that costs of the interpreter are to be borne by the United States). David A. Schroeder, Esquire, was appointed as counsel and represented Petitioner at his detention hearing held on December 10, 1998. Petitioner pled not guilty at his arraignment plea on December 17, 1998. On August 26, 1999, pursuant to a plea agreement with the Government, he withdrew his not guilty plea and entered a plea of guilty as to the conspiracy count. An interpreter, Angela Ocasio, was provided at Petitioner's change of plea hearing. Ms. Ocasio also appeared as an interpreter at Petitioner's sentencing hearing held on November 30, 1999. Prior to pleading guilty to Count I of the indictment, Petitioner faced a term of imprisonment of not less than ten years to a maximum of life. As a result of pleading guilty to Count I, the government agreed to recommend that the offense level be reduced by three levels based on Petitioner's timely acceptance of responsibility. The court accepted the three-level reduction resulting in a guideline imprisonment range of 87 to 108 months, rather than the original guideline range of 108 to 135 months. In sentencing Petitioner, the court also departed downward from the above guideline imprisonment range based on the motion of the Government as a result of Petitioner's substantial assistance. As a result, Petitioner was sentenced to 72 months' imprisonment.

### I. Discussion

Petitioner sets forth two separate ineffectiveness claims in his 2255 petition. As noted, he attacks his guilty plea and resulting sentence by alleging that he was denied effective assistance of counsel in that his counsel knew he was not conversant in English and took no steps to insure that Petitioner had sufficient notice of the charges against him or otherwise was able to comprehend the proceedings. In particular, Petitioner notes the failure of his

defense counsel to provide him with Spanish-language translations of documents. He alleges that as a result, he was denied due process, equal protection of the law, and access to the courts. He requests that his sentence and plea be vacated, and that he be provided with a Spanish speaking attorney. In Petitioner's second challenge, he alleges ineffectiveness of his counsel in failing to file an appeal. Petitioner avers that his attorney never mentioned the possibility of an appeal before or after sentencing. We will address each of Petitioner's claims in turn.

### A. Applicable Legal Principles for Ineffectiveness Claims

"The Sixth Amendment right to counsel encompasses the right to effective assistance of counsel." *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), *cert. denied*, 510 U.S. 1028, 114 S.Ct. 645, 126 L.Ed.2d 603 (1993). "A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." *McAleese*, 1 F.3d at 166; *Strickland*, 466 U.S. at 687–688, 104 S.Ct. 2052. "To establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Weeks v. Snyder*, 219 F.3d 245, 257 (3d Cir.2000) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). The same principles apply to a defendant challenging a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To establish prejudice in a guilty plea case, the defendant "must demonstrate that there is a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Weeks*, 219 F.3d at 257 (quoting *Hill*, 474 U.S. at 59, 106 S.Ct. 366). A court must be "highly deferential" in judging counsel's performance. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. In addition, a "reviewing court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *McAleese*, 1 F.3d at 175 (quoting *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052).

A similar two-part standard applies with respect to an ineffectiveness claim challenging counsel's failure to appeal. *See Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (holding that *Strickland* test applies to ineffectiveness claims alleging the failure to appeal). The United States Supreme Court in *Flores–Ortega* first looked to whether counsel in fact consulted with the defendant about a potential appeal. *Id.* at 1035. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* "If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* In evaluating this question, the Supreme Court held that counsel has a

> constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 1036. The Court further explained that in "making this determination, courts must take into account all the information counsel knew or should have known." *Id.* Whether the conviction was the result of a guilty plea is a "highly relevant factor ... because a guilty plea reduces the scope of potentially appealable issues and because

such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* In addition, in cases where a defendant does plead guilty, the court must consider whether the defendant received the sentence bargained for in exchange for the plea, and whether the plea agreement explicitly reserves or waives defendant's appeal rights. *Id.* In order to establish prejudice in this context, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 1038.

### B. Failure of Counsel to Account for Petitioner's Inability to Comprehend and Understand the Proceedings

▮ Petitioner alleges that he speaks little or no English and was therefore unable to understand his attorney or to assist in the preparation of his defense. He further contends that his lawyer was aware of the communication problem yet failed to provide Petitioner with written translations of relevant court documents. Petitioner alleges that as a result of his counsel's deficient performance he was denied notice of the charges against him violating his due process rights. The record belies Petitioner's assertion.

At their initial appearance, the Magistrate Judge explained to Petitioner and his co-defendant as follows:

> THE COURT: Now, gentleman, we have an interpreter there for your benefit. If anything is going too quickly and you don't understand it, make sure the interpreter has time to tell it to you.

Initial Appearance Transcript, December 7, 1998, at 2. The prosecuting attorney then explained to the co-defendants the charges against them and the maximum penalties they faced. *Id.* at 3–4. Petitioner indicated that he understood the charges against him. *Id.* at 4. The court then engaged Petitioner in a colloquy to determine his financial status prior to appointing counsel. *Id.* at 4–7. Petitioner appropriately answered the questions himself and there is no indication that he had difficulty in understanding the questions. *Id.* In contrast, when the court conducted the same colloquy with Petitioner's co-defendant, his brother Samuel, Samuel relied on the interpreter in part, and answered for himself in part. *Id.* at 7–9.

At his change of plea hearing, Angelo Ocasio, the interpreter, was sworn to interpret for Petitioner. Change of Plea Transcript, August 26, 1999, at 2. In addition, we explained to Petitioner as follows:

> THE COURT: Mr. Martinez, before accepting a guilty plea, there are a number of questions that I will ask you, including some about the offense itself, to insure that this is a valid plea. If you don't understand any of my questions or at any time wish to consult with Mr. Schroeder, please say so, because it's essential to a valid plea that you understand each question before you answer. Do you understand that?
>
> THE DEFENDANT: Yes.

*Id.* Thereafter this court conducted an extensive colloquy with Petitioner, in which we explained, among other things, the rights Petitioner would have if he proceeded to trial, and that by changing his plea to guilty, Petitioner is waiving his right to a trial. *Id.* at 5–7. We also read Count I of the indictment to Petitioner, explained what the government would have to prove if Petitioner elected to go to trial, what the possible maximum penalties are for the offense, and the application of the Sentencing Guidelines. *Id.* at 8–13. The prosecutor explained the plea agreement entered into between the government and Petitioner and Petitioner indicated that he agreed with the prosecutor's explanation of the agreement. *Id.* at 14–17. The prosecutor also set forth what the government expected to prove against Petitioner. *Id.* at 19–21. Before beginning, however, the prosecutor stated to Petitioner as follows:

> [PROSECUTOR]: What I'll do, Mr. Martinez, if you need interpretation, I

will try to go slow. If you need something repeated, just stop me and ask for interpretation.

. . .

*Id.* at 19. The prosecutor explained that as part of their evidence the government would introduce a tape recording of a conversation between a government informant and Petitioner in which the two negotiated for the purchase of crack cocaine. *Id.* at 20. Petitioner indicated that he agreed with the prosecutor's summary of the evidence. *Id.* at 21. In addition to finding that Petitioner was competent to plead, we also found that he knew his right to a trial and what the maximum possible penalties were for the offenses. We therefore accepted Petitioner' guilty plea. *Id.* at 22.

At no time during the change of plea hearing did the Petitioner indicate that he did not understand what was going on, or request the assistance of the interpreter. Moreover, a review of the transcript demonstrates that the Petitioner in fact understood the court, the prosecutor and his own counsel throughout the hearing. In particular, the Petitioner demonstrated that he understood what was happening when he explained to the court why he decided to plead guilty:

THE COURT: What made you decide to plead guilty, Mr. Martinez?

THE DEFENDANT: The conversation.

THE COURT: I couldn't hear you.

THE DEFENDANT: The conversation they had because they have the tapes.

THE COURT: The conversation with your attorney you mean?

[PROSECUTOR]: There is a tape-recorded conversation.

THE COURT: I see, because it was on tape, you decided it was better to plead guilty?

THE DEFENDANT: Yeah.

*Id.* at 19.

In addition, at two different points during the hearing the court inquired of defense counsel regarding his communication with the Petitioner. Shortly after the hearing began, the court asked defense counsel " have you been able to communicate with Mr. Martinez, and I mean by that in the sense that he understands the ideas you've expressed to him, you've understood the ideas he's expressed to you, in spite of any language difficulty?" *Id.* at 3. Defense counsel responded that he believed

in all of my meetings with Mr. Martinez [ ] an interpreter was present to alleviate any concerns I had with respect to that.

*Id.* Prior to accepting the Petitioner's guilty plea, the court asked defense counsel "over what period of time have you consulted with Mr. Martinez?" *Id.* at 22. In response, defense counsel stated as follows:

Since shortly after the date of his arrest I was appointed by the court and I've met regularly with Mr. Martinez and his interpreter.

*Id.* Finally, prior to sentencing a presentence investigation report was prepared by the probation office. Relevant to the instant petition, the probation officer who interviewed the Petitioner reported that Petitioner "is Spanish speaking and displays a good grasp of English. An interpreter is being used for all court-related matters to clarify unfamiliar legal terms to him." PSR, at ¶ 40, attached as Exhibit "A" to Petitioner's Motion.

Petitioner concedes that an interpreter was available to him at all of his court appearances. Significantly, he fails to address his demonstrated on-the-record ability to communicate in English, and fails to explain or address why—if he could not understand what was going on—he did not seek the assistance of the interpreters provided for him (or otherwise inform the court that he could not understand the proceedings). Our review of the record, as well as our own interaction with Petitioner, demonstrates that Petitioner was able to communicate in English with the court, his attorney, and the prosecutor; that he dem-

onstrated the ability to understand and comprehend the proceedings, including the charges filed against him; and that he knowingly and voluntarily entered into an advantageous plea agreement resulting in a term of imprisonment 37 months lower than the minimum guideline range.

The only argument Petitioner asserts regarding his in-court appearances is that his responses during his plea hearing were prompted by "stage whispers" from his counsel. There is no support for this allegation in the record. Rather than addressing his in-court appearances, Petitioner instead supports his ineffectiveness claim first by challenging his counsel's representation to the court that an interpreter was present during their meetings and second, by arguing that his constitutional rights were violated due to the failure to provide him with Spanish-language translations of relevant court documents. *See* Petitioner's Traverse to Respondent's Answer, at 2; Petitioner's Motion, at 2 (citing *United States v. Mosquera*, 816 F.Supp. 168 (E.D.N.Y.1993)).

Petitioner states that the Government "fails to produce any evidence in support of [its] contention that the defendant was visited by his Lawyer in the presence of an interpreter at any time other than Court appearances." Petitioner's Traverse to Respondent's Answer, at 2. However, the appropriate standard for evaluating Petitioner's claim of ineffectiveness of counsel is whether counsel's performance was objectively unreasonable. Thus, even if Petitioner's allegation that an interpreter was not present when he met with his counsel is true, we must then determine whether counsel's failure to ensure that an interpreter was present amounts to ineffectiveness. In light of Petitioner's on-the-record demonstrated ability to communicate and comprehend the proceedings, we conclude that counsel was not ineffective. Moreover, even if Petitioner was able to establish that defense counsel's conduct was objectively unreasonable, he is unable to demonstrate that " 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Weeks*, 219 F.3d at 259 (quoting *Hill*, 474 U.S. at 59, 106 S.Ct. 366).

Petitioner's reliance on *Mosquera* is also without merit. "The Court Interpreters Act does not require a written translation of documents in the case." *De La Rosa v. United States*, 1995 WL 251302, *2 (E.D.Pa.1995) (citing 28 U.S.C. § 1827(d)(1)). The petitioner in *De La Rosa* also relied on the *Mosquera* decision in support of the contention that he was entitled to a written translation of court documents. *Id.* The complex situation in *Mosquera* is in no way similar to the relatively simple factual scenario in the present case. As explained by the *De La Rosa* court, in *Mosquera*, "the court found that the single interpreter provided to translate simultaneously for 18 Spanish-speaking defendants in complex proceedings involving 10,000 documents and 550 transcripts could not adequately keep each defendant apprised of what was transpiring." *Id.* Therefore, the court *sua sponte* ordered that the indictment and certain other documents be translated into Spanish, and the government moved for reconsideration of that order. *Mosquera*, 816 F.Supp. at 170. We do not read *Mosquera* as entitling every non-English speaking defendant to written translations. *See also De La Rosa*, 1995 WL 251302, at *2.

Here, there were only two defendants on a two-count indictment involving a single drug transaction.[1] An interpreter was provided at each court hearing, and Petitioner was the only defendant present at his guilty plea and sentencing hearings. The transcripts of the proceedings demonstrate that Petitioner was able to comprehend the charges against him. He clearly was able to understand his rights and voluntarily entered a plea of guilty. Petition-

---

1. Petitioner's brother, Samuel Martinez, eventually pled guilty and was sentenced. However-

er, prior to being taken into custody he became a fugitive.

er never indicated that he did not understand what was happening, nor did he call upon the interpreter to translate for him. In this regard, we note that at his initial appearance, Petitioner not only demonstrated his ability to communicate in English, but also he observed the interpreter translating for his brother. Like the petitioner in *De La Rosa*, the Petitioner here also "never requested a written translation of any document." *Id.*

In light of the record evidence demonstrating Petitioner's ability to comprehend, and the absence of any evidence indicating that Petitioner was unable to understand what was happening to him, we cannot say that defense counsel's performance was objectively unreasonable. To the contrary, given the summary of evidence the government intended to prove against Petitioner, it appears that Petitioner's counsel was able to negotiate an advantageous plea agreement resulting in a sentence well below the maximum possible. We again emphasize that the Petitioner himself explained that he was pleading guilty because the Government had tape recordings of the Petitioner and a confidential informant discussing a drug transaction. "Thus, the record flatly negates defendant's allegation that [he] lacked the requisite understanding." *United States v. Sanchez*, 1987 WL 27006, *2 (E.D.N.Y. 1987). Because Petitioner is unable to establish that his counsel's performance was deficient, his claim of ineffectiveness must fail.

## C. Failure to File An Appeal

■ Petitioner also alleges that he was deprived of his right to appeal. In support of his claim Petitioner relies on the fact that no appeal was filed, and on his assertion that his counsel never discussed an appeal with him. On May 15, 2000, Petitioner sent a letter to his counsel requesting a copy of his plea agreement and inquiring as to the status of the appeal of his sentence. Letter attached as Exhibit "D" to Petitioner's Motion. Petitioner specifi-

cally asked counsel, "Has your office filed a "Notice of appeal" of the judgment? If not why not." *Id.* Counsel responded by letter dated June 12, 2000, and stated, in relevant part, as follows:

As I had explained to you previously, no appeal was filed in this matter as there was no legal reason to do so. The sentence that was imposed by the Court was clearly within the legal range of sentences that can be imposed, and unless there is a legitimate legal reason to appeal a sentence, it is not done.

Letter attached as Exhibit "E" to Petitioner's Motion. Petitioner denies that his attorney consulted with him about an appeal. However, counsel's failure to file an appeal following a guilty plea and sentence is not deficient *per se.* See *Flores–Ortega*, 120 S.Ct. 1029.

■ "Under the regime established by *Flores–Ortega*, Petitioner must demonstrate, first that his attorney had a duty to consult with him regarding his right to appeal, and second that he would have appealed but for counsel's failure to perform that duty." *Ryan v. United States*, 97 F.Supp.2d 190, 194 (D.Mass.2000). Counsel has a duty to consult only where he has reason to think either that a rational defendant would want to appeal, or that this particular Petitioner reasonably demonstrated to counsel that he had an interest in appealing. *Flores–Ortega*, 120 S.Ct. at 1036. Under the totality of circumstances here, we conclude that Petitioner cannot show that a rational defendant would want to appeal. *See id.*

Petitioner plead guilty, suggesting that he wished an end to judicial proceedings and did not desire further litigation. *Id.* Petitioner faced a maximum of 10 years to life imprisonment, but, as a result of the plea agreement, he faced a guideline range term of 108 to 135 months, which was further reduced as a result of his timely acceptance of responsibility to 87 to 108 months. Upon motion by the government as a result of Petitioner's substantial assistance, the court sentenced Petitioner to 72

**516**

months' imprisonment. "That Petitioner pled guilty and received the relatively lenient sentence[ ] bargained for weighs strongly in favor against a finding that a rational defendant would wish to appeal." *Ryan,* 97 F.Supp.2d at 195 (citing *Flores–Ortega,* 120 S.Ct. at 1036). Although not determinative, there also does not appear to be a nonfrivolous issue for appeal. Petitioner only asserts his ineffectiveness claim based on his contention that he did not understand or comprehend the proceedings. As discussed above, this issue is clearly frivolous in light of the record evidence. Given "all the information counsel knew or should have known," we conclude that there is no basis for finding that a rational defendant would have wanted to appeal. *Id.* In addition, there is no record evidence that Petitioner reasonably demonstrated to his counsel that he was interested in appealing. Accordingly, because counsel had no duty to consult Petitioner, counsel cannot be found ineffective for the failure to appeal. In addition, even if Petitioner was able to demonstrate ineffectiveness, he cannot satisfy the prejudice prong of *Strickland,* because, for the reasons explained above, he cannot show that he otherwise would have appealed. Finally, at the conclusion of the sentencing hearing, the court stated: "Mr. Martinez, you have a right to appeal; you are entitled to a lawyer at every stage of the proceedings, and if you cannot afford an attorney, one will be provided for you without charge."

### D. Access to Court Claim

Petitioner also purports to assert a violation of his First Amendment right to meaningful access to the courts by alleging that the institutions where he has been housed do not provide legal research documents in his native language or legal assistance *per se* to non-English speaking inmates. Petitioner's Motion, at 6. An inmate has "no free-standing rights to a law library or legal assistance." *Reynolds v. Wagner,* 128 F.3d 166, 183 (3d Cir.1997), citing *Lewis v. Casey,* 518 U.S. 343, 351–55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Legal assistance and law libraries are merely means by which an inmate gains his right of access to the court. *Id.* "[T]o be able to bring a viable claim, the [inmate has] to show a direct injury to [his] access to the courts." *Id.* Petitioner has failed to point to any evidence of a direct injury to his right of access to the courts, and thus this claim must fail. *See Lewis,* 518 U.S. at 351–55, 116 S.Ct. 2174; *Reynolds,* 128 F.3d at 183; and *Williams v. Lehigh Department of Corrections,* 79 F.Supp.2d 514, 518 (E.D.Pa.1999)

### II. Conclusion

Petitioner's assertion that he was unable to understand his attorney or comprehend the proceedings is belied by the record. Accordingly, his claim that his counsel was ineffective must fail. Likewise, Petitioner is unable to establish that his counsel had a duty to consult with him regarding an appeal from his sentence imposed following a guilty plea. Not only is Petitioner unable to establish that his counsel was ineffective, he is unable to show that he was prejudiced such that he would have appealed. Therefore, Petitioner's motion pursuant to 28 U.S.C. § 2255 will be denied.

### ORDER

AND NOW, to-wit, this 16th day of November, 2000, it is hereby ORDERED, ADJUDGED and DECREED that Petitioner's Petition for relief pursuant to 28 U.S.C. § 2255 (**Doc. No. 48**) be and hereby is DENIED.