Edwin Coe **BERGMAN, Petitioner—
Appellee,**

v.

Larry **WITEK, Warden, Respondent—
Appellant.**

No. 03–55485.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 2004.

Decided May 19, 2004.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

William J. Genego, Esq., Nasatir, Hirsch, Poberesky & Genego, Santa Monica, CA, for Petitioner–Appellee.

Richard T. Breen, DAG, Los Angeles, CA, for Respondent–Appellant.

Before: KLEINFELD, WARDLAW, and BERZON, Circuit Judges.

MEMORANDUM *

We review de novo the district court's legal analysis and its grant of habeas relief.[1] Under *Bonin v. Calderon,* Bergman is only entitled to habeas relief for a violation of his Sixth Amendment right to counsel free from conflicts of interest if he can "show: (1) that counsel actively represented conflicting interests, and (2) that an

1. *Alcala v. Woodford,* 334 F.3d 862, 868 (9th Cir.2003).

actual conflict of interest adversely affected his lawyer's performance."[2]

As in *Bonin,* the facts of this case do not establish an actual conflict of interest.[3] The district court faulted Bergman's lawyer for not getting an agreement in writing confirming Bergman's potential release on bail and the return of $4,550 in exchange for his accompanying authorities on a trip to Lake Mead. But often an agreement binding on the government is not available. The lack of an explicit agreement was precisely why no actual conflict was found in *Bonin.*[4] Bergman's lawyer only stood to receive $100 of the funds, had they been returned, as the rest of his fees were to be paid primarily from the deed to Bergman's house, which is not to imply that a lawyer's interest in getting paid establishes an actual conflict of interest with the client. A client has an interest in having his lawyer be adequately compensated. The expectation of Bergman's lawyer to be paid did not "by itself create the type of direct 'actual' conflict of interest" that Bergman must demonstrate to prevail on his claim.[5] Bergman's interests included a favorable bail recommendation, so his lawyer's actions in attempting to secure bail were not inconsistent with Bergman's interests. Unless the interests of a lawyer and a client actually diverge, there is no actual conflict of interest.[6] That information gathered from the trip to Lake Mead was ultimately used at trial to convict Bergman does not demonstrate that an actual conflict existed.

Because Bergman has not, under current law, established an entitlement to relief, we need not decide whether *Teague*[7] would bar relief,[8] or whether *Teague* was waived.[9]

The petition for a writ of habeas corpus must be denied.

REVERSED.

BERZON, Circuit Judge, concurring.

BERZON, Circuit Judge.

I concur in the memorandum disposition. There is, however, an additional reason why I would deny the habeas petition. Even if there were an actual conflict of interest, this is not a case, I believe, to which the rule of *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), would apply. *Cuyler* holds that the prejudice inquiry required under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for ineffective assistance claims is not necessary where there was an actual conflict between the trial lawyer and her client that affected the representation at trial. 446 U.S. at 349–50, 100 S.Ct. 1708 (citing *Holloway v. Arkansas,* 435 U.S. 475, 487–91, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). The reason for this rule is that where one has a conflicted lawyer at trial, there is no sensible way to determine which decisions may

---

**2.** *Bonin v. Calderon,* 59 F.3d 815, 825 (9th Cir.1995).

**3.** *Id.* at 826 ("The fact that an attorney undertakes the representation of a client because of a desire to profit does not by itself create the type of direct 'actual' conflict of interest required by *Cuyler[v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)].")

**4.** *Id.* at 825.

**5.** *Id.*

**6.** *Id.* at 827.

**7.** *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

**8.** *See Bell v. Hill,* 190 F.3d 1089, 1091—93 (9th Cir.1999); *United States v. Hearst,* 638 F.2d 1190, 1193 (9th Cir.1980).

**9.** *Cf. Goeke v. Branch,* 514 U.S. 115, 117—18, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995).

have been influenced by that conflict, and therefore no way to assess the prejudice due to the conflict. *Id.*

Here, the trial lawyer was not the attorney with the conflict. And we do know *precisely* the impact of any conflict on the trial—the prosecution obtained and used at trial the evidence that Bergman purported to know where the body was. As Bergman has abandoned his *Strickland* claim, he has conceded that the introduction of that evidence, judged on *Strickland* standards, did not result in a sufficient degree of prejudice to call his conviction into question. This is an understandable position for Bergman to have adopted, given that his story at trial—that he had participated in the disposal of the body but not in the murder—was not inconsistent with the evidence of his knowledge of the whereabouts of the body. As I would apply a *Strickland* prejudice standard and find, because Bergman has abandoned the argument, no prejudice, I concur in the result for that reason as well as the reasons stated in the memorandum disposition.